No. 47,473

JUNE A. SHAPIRO, as the widow of Roy Shapiro, deceased, *Appellant*,
v. KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellee*.

(532 P. 2d 1081)

Opinion filed March 1, 1975.

*L. M. Cornish, Jr.,* of Glenn, Cornish and Leuenberger, of Topeka, argued the cause, and *Henry J. Schulteis,* of the same firm, was with him on the brief for the appellant.

*Marshall Crowther,* special assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: The issue to be determined in this case is whether the widow of a member of the Kansas Public Employees Retirement System is entitled to recover interest on accidental death benefits wrongfully withheld by the system. The appellant-plaintiff is June A. Shapiro, the widow of Roy Shapiro who was employed by the state of Kansas in the position of state controller. We will refer to her in this opinion as the plaintiff. The appellee-defendant is the Kansas Public Employees Retirement System which will be referred to as KPERS. This case was before this court on appeal in *Shapiro v. Kansas Public Employees Retirement System,* 211 Kan. 452, 507 P. 2d 281. There we affirmed the judgment of the district

court granting accidental death benefits to Mrs. Shapiro. The facts and circumstances pertaining to the relationship of the parties and the obligation of KPERS to pay accidental death benefits are discussed fully in that opinion. Following the affirmance of the judgment of the district court KPERS made payment to the plaintiff in the amount of $45,636.30 which represented all accumulated benefits due and owing from and after May 29, 1967, the date of Mr. Shapiro's death.

Following the entry of judgment plaintiff made demand upon KPERS for interest on the death benefits during the period they were wrongfully withheld by KPERS. Upon refusal of this demand plaintiff filed a motion in the district court for such interest. This motion was denied by the district court and the matter is now here on appeal. The plaintiff claims interest at the statutory rate of six percent from the date of Mr. Shapiro's death to the date of judgment and at eight percent from the date of judgment to the date the death benefits were paid in full. The determination of the amount of interest is simply a matter of mathematical calculation which is not in dispute. The sole question for our determination is whether the district court erred in denying interest to the plaintiff for the period during which the accidental death benefits were wrongfully withheld.

The plaintiff argues on this appeal that where a liquidated obligation becomes due and payable and payment is withheld, a creditor is entitled to recover interest as a matter of right. In the absence of an agreed rate of interest, interest at the rate of six percent per annum accrues until the obligation is fully paid. (K. S. A. 16-201.) Plaintiff further contends that where a liquidated sum is due under an express contract, the statute is applicable and interest is recoverable from the date the debt becomes due. (*Kansas Power & Light Co. v. Hugoton Production Co.*, 251 F. 2d 946 [10th Cir., 1958]; *Potts v. Lux*, 168 Kan. 387, 214 P. 2d 277; *Smart v. Hardware Dealers Mutual Fire Insurance Co.*, 181 F. Supp. 575.) The plaintiff then points out that state retirement systems create contracts between the state and its employees who are members of the system. (*Ogden et al., Aplnts. v. Pub. Sch. Em. Ret. Bd.*, 198 Pa. Sup. 174, 182 A. 2d 228.) Under the KPERS system employees of the state and other political subdivisions make monthly contributions in exchange for promised pensions and survivors benefits upon the death or retirement of the member. Hence, it is argued, a contractual obligation arises on the part of the system to make the

promised payments. The statutory provisions for pensions and survivors benefits constitute a contract between the system and its members. Plaintiff takes the position that when payments due and owing under the contract are wrongfully withheld and where they are liquidated sums, the member is entitled to interest prior to judgment as a matter of right at the rate of six percent per annum in accordance with K. S. A. 16-201. Following entry of judgment interest at the rate of eight percent per annum accrues under the express provisions of K. S. A. 16-204.

KPERS on this appeal relies primarily upon *Brown v. State Highway Commission,* 206 Kan. 49, 476 P. 2d 233, where we held that the heirs of a person whose death resulted from a defect in a state highway were not entitled to recover interest on a judgment rendered against the state highway commission in an action brought under the provisions of K. S. A. 68-419. The rationale of the decision in *Brown* was based upon the doctrine of sovereign immunity. We reasoned that since the state cannot otherwise be sued in tort, its liability for damages resulting from highway defects is purely statutory and that statutes waiving sovereign immunity must be strictly construed. We stated that a statute which in general terms provides for the payment of interest does not apply to the state unless it expressly so provides. We concluded that the general interest statute K. S. A. 16-204, providing in substance that all judgments shall bear interest from the date they are rendered, has no application to a judgment against the state based upon a claim of liability of the State Highway Commission for a defective highway under K. S. A. 68-419.

We have concluded that *Brown* does not control the right of the plaintiff to recover interest under the circumstances shown in this case for the reason that the doctrine of sovereign immunity should not apply to a claim based upon the breach of an express contract made by KPERS with its members to pay accidental death benefits. By statute KPERS was created a "body corporate" (74-4903) and was given the status of a distinct legal entity which can sue and be sued in its official name. (74-4904.) It has been granted broad powers to carry out the purposes and intentions of the act including the power to contract both with the state (74-4909) and with others. (74-4903.) The statute provides that a member's rights in the system shall become vested after ten years credited service. (74-4917 [2].) Various statutes require the allowance of interest on moneys paid into an individual member's account. (74-4902

[1] and [7]; 74-4908; 74-4919; 74-4922 [1] [*a*], [*c*], and [*d*].) In view of these provisions we think it obvious that the legislature has given its consent that KPERS may be sued on contracts made in relation to performing its powers, duties, and responsibilities under the pertinent statutes. Under similar statutory provisions we have held that the State Highway Commission is liable for its contracts and may be sued thereon. (*McCandliss Construction Co. v. Neosho County Comm'rs.*, 132 Kan. 651, 296 Pac. 720; *Atchison v. State Highway Comm.*, 161 Kan. 661, 171 P. 2d 287; *Kiewit & Sons' Co. v. State Highway Comm.*, 184 Kan. 737, 339 P. 2d 267; *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P. 2d 981.)

KPERS does not contest the right of a member to bring an action against it to enforce the member's beneficial rights in the system. The problem presented here is whether KPERS may avoid the payment of interest where it wrongfully withholds benefits from a member or his beneficiaries. In a number of past decisions we have held that under the doctrine of sovereign immunity a county is not liable for interest on its obligations, unless some statute expressly so provides. (*Jackson County v. Kaul.*, 77 Kan. 715, 96 Pac. 45; *Salthouse v. McPherson County.*, 115 Kan. 668, 224 Pac. 70; *School District v. Kingman County Comm'rs.*, 127 Kan. 292, 273 Pac. 427; *First Nat'l Bank v. Wabaunsee County Comm'rs*, 145 Kan. 552, 66 P. 2d 558; *Brown v. State Highway Commission*, supra.) The rule which precludes a contracting party from recovering interest from the state or one of its political subdivisions in actions brought for breach of an express contract is based in part on a rule of the common law that the charging of interest is *ipso facto* abhorrent to morals and religion. From the earliest times the term "usury" was synonymous with the term "interest", and meant the taking of any compensation whatever for the use of money. Later it became recognized that the charging of interest is a vital necessity to develop commerce and trade in a free society. An excellent, comprehensive discussion on the history of interest is contained in *Marshall v. Beeler.*, 104 Kan. 32, 178 Pac. 245.

The antipathy toward the allowance of interest was also expressed in the concept that the state or a governmental body should not be required to pay interest on its contractual obligations unless it has expressly agreed to do so or unless it is required to do so by statute. The theory of the rule is that the sovereign is different from other litigants and always fair. It is a carryover from the

theory "that the king can do no wrong." The reason for the rule was stated by the courts to be that "the government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise." (*Milwaukee v. Firemen Relief Asso.*, 42 Wis. 2d 23, 165 N. W. 2d 384.) We believe that the theory that a rule of law requiring government to pay interest is by implication a slander that the sovereign does not meet its obligations is not based upon sound factual grounds and cannot be taken seriously today. It needs no documentation to assert that the sovereign on occasion, willfully or not, does do a wrong, and in its dealings with its citizens is not infrequently subject to criticism by the public and correction by the courts. The common-law rule that the state should not be required to pay interest on its just debts is untenable in our times. In our judgment the loss of the use of money, whether occasioned by the delay or default of an ordinary citizen or of the state or one of its political subdivisions, ought to be compensated. This is especially true in those situations where the state has agreed by an express contract to pay retirement and death benefits to its employees and where it has been found to have wrongfully withheld the same. We see no justice in a rule which permits the state to retain for its use without interest money which it was legally obligated to pay over to a widow for her support.

Where the state legislature has consented that one of its agencies may be sued on its express contracts, the waiver of sovereign immunity should extend to every aspect of its contractual liability including the right of the other contracting party to recover interest where it is customarily included as a part of the damages to be awarded for breach of contract. As we stated in *Carroll v. Kittle*, 203 Kan. 841, 457 P. 2d 21, if the government is to enter into business ordinarily reserved to the field of private enterprise, it should be held to the same responsibilities and liabilities.

Interest has been defined as the compensation allowed by law or fixed by the parties for the use, detention, or forbearance of money. In our society today money is a commodity with a legitimate price on the market and loss of its use, whether occasioned by the delay or default of an ordinary corporation, citizen, state or municipality should be compensable.

In this case the plaintiff's husband during his lifetime made regular and continuous contributions to KPERS in consideration of which KPERS promised to pay specific benefits upon his death or

retirement. A member of KPERS or his beneficiary should be provided the same protection and the same redress as if the breach of contract had been committed by a private insurance company. Interest chargeable as additional compensation for detention of a liquidated sum has traditionally been a part of the damages to be awarded for breach of contract. Since the state legislature has expressly provided that KPERS may be sued on its contractual obligations it seems to us that basic principles of justice require that interest should be allowed as a proper element of damages for its breach of contract. (*State Highway Comm. v. Wunderlich,* 194 Miss. 119, 11 So. 2d 437.)

We have not overlooked the fact that in 1973 the legislature amended K. S. A. 16-204 to read as follows:

"16-204. Judgments; time and rate. All judgments of courts of this state, including judgments rendered on or after the effective date of this act against the state or any of its agencies or any city, county, school district or other political subdivision of the state, shall bear interest from the day on which they are rendered, at the rate of eight percent (8%) per annum, except as otherwise provided."

Although the statute is restricted to judgments rendered against the state on or after July 1, 1973, it does not expressly preclude the allowance of interest on claims or judgments based upon a liability of the state or its agencies arising from the breach of an express contract prior to that date.

For the reasons set forth above the judgment of the district court is reversed and the case is remanded with instructions to determine the proper amount of interest which should be allowed on the accidental death benefits wrongfully withheld by KPERS from the time such benefits should have been paid until they were actually paid.

FONTRON, J., dissenting.