No. 50,876

RICHARD D. SINGER, ALAN L. WARNER, DENNIS PERKINS, and WALTER KUEHL, *et al., Appellees,* v. THE CITY OF TOPEKA, KANSAS, *et al., Appellants.*

(607 P.2d 467)

Opinion filed March 1, 1980.

*Leon B. Graves,* assistant city attorney, argued the cause, and *Dan E. Turner,* city attorney, was with him on the brief for the appellants.

*John R. Martin,* of Ralston & Frieden, of Topeka, argued the cause, and *John C. Frieden,* of the same firm, and *Randall J. Forbes,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

MILLER, J.: The validity of three statutes governing fire and police pensions is at issue in this case. The trial court held all three sections, K.S.A. 1977 Supp. 13-14a02, and K.S.A. 1977 Supp. 12-5004 and 12-5005, as applied to the plaintiffs, unconstitutional under the contract clause of the United States Constitution, art. I, § 10. Appeal was taken directly to this court, as authorized by K.S.A. 1979 Supp. 60-2101(*b*).

The plaintiffs are employees of the defendant City of Topeka. Richard Singer and Alan Warner are employed as firemen; Dennis Perkins and Walter Kuehl are employed as policemen. They brought this declaratory judgment and injunction action against the City of Topeka, challenging the constitutionality of statutory changes in the pension laws. A chronological statement of the stipulated facts, and of the statutory background, is necessary to an understanding of the issues.

On July 1, 1945, Laws of Kansas, 1945, ch. 111, codified as K.S.A. 13-14a01 *et seq.,* became effective. The act requires cities of the first class, including Topeka, to establish separate pension funds for firemen and for policemen. Under K.S.A. 13-14a02, 3% of the monthly salary of each policeman and fireman is paid into the respective pension fund. The proceeds of all unclaimed lost or stolen property, and all gifts or bequests designated for that purpose, are divided and credited to the pension funds. The cities are directed to levy an annual tax of not more than one mill for each fund, to maintain each at the level necessary to pay anticipated benefits for the ensuing year, and to maintain a reserve of not more than $50,000 in each fund. Local boards are created to administer each fund and to invest the reserves. Each employee is required to pay a "membership fee" of $5.00, which is credited to the appropriate pension fund. Specific disability and retirement benefits are fixed by the act.

The City of Topeka established pension funds for its firemen and for its policemen when the 1945 act became effective. The four plaintiffs were thereafter hired by the City as firemen or policemen. Singer has been employed as a fireman since April 1,

1955, Warner since September 18, 1961. Perkins has been a policeman since July 1, 1966, Kuehl since July 16, 1966. Each paid the membership fee, each had 3% of his monthly salary deducted and credited to the appropriate retirement fund, and each was covered by the local retirement plan mandated by K.S.A. 13-14a01 *et seq.* None of the Topeka firemen or policemen are covered by social security.

In 1961 the Kansas Public Employees Retirement System, KPERS, was established. See K.S.A. 74-4901 to -4946, as amended. In 1965, the Kansas Police and Firemen's Retirement System, KP&F, was created as a division of KPERS. K.S.A. 74-4951 *et seq.* One of the sections of that act, K.S.A. 74-4954, gives the cities an option, exercisable by action of the governing body, to become a "participating employer" and to join the KP&F system with regard to its policemen, firemen, or both, as of the first day of January of any year after the effective date of the act. The cities may join only as to policemen and firemen employed on or after the effective date of joinder, or the cities may join as to persons employed immediately prior to and on the entry date. If all city policemen and firemen are not included initially, the city may apply to extend coverage to other groups at a later date. The act requires participating KP&F employers to withhold 7% from the gross pay of each covered employee not also covered by social security, and to remit such deductions to KPERS. K.S.A. 74-4965. Disability, death, and retirement benefits are fixed by the act.

The City of Topeka elected, in 1966, to become a participating member of KP&F as of January 1, 1967, as to all police and firemen employed on or after that date. All police and firemen hired before January 1, 1967, remained under the local plan; those persons including plaintiffs, continued to contribute 3% of their salaries to the plan.

The 1976 legislature amended K.S.A. 13-14a02, -14a05, -14a06, and -14a07, and increased the required employee contribution from 3% to 7% for those police and firemen who were still under local pension plans. The amendments became effective on January 1, 1978. No additional disability, death, or retirement benefits were granted to the covered employees, except for a modification of the outside income allowed to pensioners. K.S.A. 1977 Supp. 13-14a08. Other 1976 legislation, K.S.A. 1977 Supp. 12-5001 to -5007, inclusive, did, however, require the cities to set up

actuarially sound plans; the $50,000 reserve fund limitation was repealed.

The original class action petition in this case was filed on December 30, 1977. It alleged that the local plan initiated by the City under the 1945 act was used as an inducement to attract and retain qualified fire and police officers; that the plan was a contractual obligation between the City and its employees; and that the 1976 act, mandating increased contributions from the employees without providing increased benefits, infringed the employees' contractual rights and was in violation of art. 1, § 10, clause 1, and the Fourteenth Amendment of the United States Constitution. Plaintiffs sought to represent the class, consisting of about 209 Topeka policemen and firemen who are members of the local plan. They asked the court to determine that this is a proper class action under K.S.A. 60-223; to restrain and enjoin the City from withholding 7% of the monthly salaries of the named plaintiffs and the class they represent; and to declare the 1976 amendments unconstitutional.

A temporary restraining order was entered by the trial court on December 30, 1977, but that order was dissolved on January 12, 1978, on which date, by stipulation of the parties, the City was ordered to withhold 7% of plaintiffs' and the class's salaries, and to retain those funds as identifiable so that in the event the 1976 amendments were declared unconstitutional the excess over 3% is to be returned to plaintiffs and to the class with interest equivalent to the then prevailing rate on passbook savings at savings and loan associations in Topeka, Kansas. That order remains in effect.

The City deducted 7% from the paychecks issued to plaintiffs and the class in January, 1978, which checks were in payment of salaries earned partly in December, 1977, and partly in 1978. 7% has been deducted from each salary payment since that date.

On July 18, 1978, the City of Topeka, by resolution, elected to extend its participation in KP&F effective January 1, 1979, to include coverage for *all* Topeka firemen and policemen, including those employed prior to January 1, 1967, who were under the local plans. This extension of coverage is authorized by K.S.A. 1977 Supp. 74-4954. The effect of this action by the City is to abolish the local plans and the local boards created to administer them, to cause all pension reserves held locally to be transferred to KPERS, and to transfer all administration of the plans from

local to state authorities, all as provided by K.S.A. 1977 Supp. 12-5004. A further effect of this action by the City was to give to plaintiffs and to the class an election to become full members of the KP&F system, by filing written elections to do so on or before January 1, 1979; failure to file such an election is considered an election not to become a full member of the KP&F system. K.S.A. 1977 Supp. 12-5003(*a*); K.S.A. 1977 Supp. 74-4955. Those who fail to file an election become "special members" of KP&F. K.S.A. 1977 Supp. 12-5005(*a*). Special members continue to be entitled to the same pension and other benefits provided by the local plans. K.S.A. 1977 Supp. 12-5005(*c*). Special members become subject to the 7% contribution requirements of K.S.A. 1977 Supp. 12-5005(*b*); full members are required to contribute 7% under K.S.A. 1977 Supp. 74-4965.

A second amended petition was filed on September 15, 1978; in addition to the claims included in the original petition was a challenge to the City's action of July 18, 1978. The plaintiffs did not elect to become full members of the KP&F system; thus they became "special members" with no increase in benefits but with an increased contribution rate of from 3% to 7%. The second amended petition also sought return of the deductions above 3% from the salaries earned in December, 1977.

The parties stipulated that "[s]ince January 1, 1978, there have been no changes in the benefits available to the members of the Local Plans"; that "[m]embers of the Local Plans who fail to elect pursuant to K.S.A. 1977 Supp. 74-4955 will become 'special members' of KP&F retaining the benefits of the Local Plans, but having their contribution rate increased from 3% to 7% of their salaries"; "[t]hat the plaintiffs do not intend to elect to become members of KP&F"; and that "[s]ince the original establishment of the Local Plans, pursuant to K.S.A. 13-14a01 et seq. there has been no increase in the benefits provided by said plans, provided, however, the City does not hereby waive its allegation that the statutorily required actuarial soundness of local plans will be a benefit to the members." They further stipulated that plaintiffs have never been covered by social security.

The matter came on for trial on October 4, 1978. The parties relied upon the stipulations; no further evidence was offered. Counsel fully argued and briefed the issues. The trial judge prepared a comprehensive memorandum decision, filed December 12, 1978. The court's conclusions were as follows:

"In summary, the Court holds as follows:

"1. Pension plans between the municipality of the City of Topeka and its firemen and policemen are contracts and not mere gratuities of the employer.

"2. Plaintiffs have acquired sufficient vested contractual interests to challenge the constitutional validity of the legislative and municipal ordinance enactments raising their contributions to the local pension plan, in the first instance, and abrogating such local plan and converting it into the State KP&F pension fund.

"3. Reasonable modifications to pension plans may be made by municipalities, but only if those modifications provide any additional burdens be offset with correlative benefits to the employees covered by the plan.

"4. Under the stipulated facts before the Court, no offsetting benefits have been provided in the modifications of plaintiffs' pension plan sufficient to compensate plaintiffs for the additional burdens imposed by the modifications.

"5. No financial exigency or other emergency has been proved by plaintiffs sufficient to justify the exercise of the extraordinary police power of the State to abrogate the earned benefits of the firefighters and policemen who constitute the plaintiffs in this cause.

"Through summer's heat and winter's icy blasts, from tall buildings ablaze to dark alleys ringing with gunshots, the City of Topeka has required the services of the plaintiffs herein. As a partial inducement for the acquisition of these often heroic and rarely appreciated contributions to the public safety and welfare the City of Topeka offered to its firemen and policemen a modest pension plan to provide for their disability, death and old age, should they be so fortunate as to attain it. It would take a compelling reason indeed, for this Court to hold that the City of Topeka may, with the stroke of the pen, whether encouraged by the State Legislature or not, renege on its contractual commitments to these men and women who have not reneged on their commitments to our citizens.

"It is therefore the judgment of this Court that K.S.A. 13-14a02 and K.S.A. 1977 Supp. 12-5004, -5005 as applied to the plaintiffs in this cause contravene Article 1, Section 10, Clause 1 of the Constitution of the United States and the Fourteenth Amendment thereto and as such are void and of no force and effect. Defendants are herewith restrained and enjoined from the abolition of the firemen and policemen local pension plans in the manner proposed and are herewith ordered and directed to refrain from withholding more than three percent from the monthly salaries of the members of such local plans and are herewith required to return to plaintiffs any such funds heretofore withheld, together with interest earned thereon. If the parties are unable to agree concerning the membership of the class which plaintiffs purport to represent herein, this Court will order a hearing for such purpose and resolve those issues."

In January, 1979, the trial court held a hearing and certified two classes. Class I consists of all Topeka firemen and policemen employed at any time during the year 1978 who were then active members of the local police or fire pension plan. Class II includes all Topeka firemen and policemen employed on December 31, 1978, who were then active members of the local police or fire

pension plan, and who do not intend to become full members of KP&F pursuant to K.S.A. 1977 Supp. 74-4955. The court held that its ruling that K.S.A. 1977 Supp. 13-14a02 is void, and requiring the return of funds in excess of 3% of monthly salaries previously withheld, is applicable to members of class I, and that its holding that K.S.A. 1977 Supp. 12-5004 and -5005 are unconstitutional, and enjoining the City from abolishing the local plans and restraining it from withholding more than 3% of monthly salaries thereafter is applicable to the members of class II. There is no dispute as to the class aspect of this case.

The City argues but one issue in its brief: Did the trial court err in its judgment that K.S.A. 1977 Supp. 12-5004, 12-5005, and 13-14a02 contravene the contract clause and the due process clause of the United States Constitution? In order to resolve this issue we must determine:

(1) whether governmental pension plans in this state are mere gratuities, subject to unilateral change at will, or whether they are a form of contract between employer and employee;

(2) whether, at the time this action was commenced, plaintiffs and the classes possessed vested contract rights which were subject to the protection of the contract clause;

(3) whether a governmental employer may unilaterally change or modify a pension plan, and if so, within what limitations; and

(4) whether the challenged statutes impose a substantial detriment on plaintiffs and the classes, without correlative benefit.

The earliest Kansas case dealing with pensions of governmental employees appears to be *State, ex rel., v. Board of Education,* 155 Kan. 754, 129 P.2d 265 (1942). In 1911, a teachers' retirement law was enacted. In 1935, the legislature repealed the 1911 law and enacted a new retirement law for teachers. The new law raised the teacher's contribution from 1½% to a maximum of 6%, and it raised from 15 to 20 the number of years one must teach before becoming eligible to retire. Each teacher was granted the right to elect not to come within the new act by filing a written request with the board of education, asking for exemption. The new act was challenged in an action brought by the attorney general, who contended that the rights of the teachers had become fixed and that they had vested rights under the 1911 act.

None of the teachers had "opted out." This court found it unnecessary to determine whether the teachers had vested interests in the retirement fund under the 1911 act since none had requested exemption and thus all were eligible for benefits under the new act. The court held that even if there was a contractual relationship, the failure to file requests for exemption manifested assent to participate in the new plan; the old contract was abandoned and a new one substituted with the assent of the parties.

In its discussion, the court said:

"It is generally held that a pension granted by the public authorities is not a contractual obligation, but a gratuitous allowance in the continuance of which the pensioner has no vested right. By the great weight of authority the fact that a pensioner has made compulsory contribution to the fund does not give him a vested right in the pension. (See Annotations 54 A.L.R. 943; 98 A.L.R. 505; 112 A.L.R. 1009; 137 A.L.R. 249.)" 155 Kan. at 757.

The quoted language, though dicta in that case, was not followed in our later decisions and is not the law of this state. It is expressly disapproved.

In *Shapiro v. Kansas Public Employees Retirement System,* 216 Kan. 353, Syl. ¶ 1, 532 P.2d 1081 (1975), we said:

"State retirement systems create contracts between the state and its employees who are members of the system."

This is the rule followed in most recent cases on the subject, and seems to us the more enlightened view. A public employee, who over a period of years contributes a portion of his or her salary to a retirement fund created by legislative enactment, who has membership in the plan, and who performs substantial services for the employer, acquires a right or interest in the plan which cannot be whisked away by the stroke of legislative or executive pen, whether the employee's contribution is voluntary or mandatory.

We recognize that this is an area upon which the courts are not in accord. Some courts have held pensions to be mere gratuities, changeable in whole or in part at will. See *Pennie v. Reis,* 132 U.S. 464, 33 L.Ed. 426, 10 S.Ct. 149 (1889); Annot., Vested Right of Pensioner to Pension, 52 A.L.R.2d 437; and Cohn, *Public Employee Retirement Plans - The Nature of the Employees' Rights,* Ill. L.F. 32 (1968). Some have held pension plans to create inflexible rights. See *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965). In at least one instance the court found neither gratuity nor contract but decided the issues by relying upon legislative

history. *Spina v. Consolidated Police, etc., Pension Fund Com.,* 41 N.J. 391, 197 A.2d 169 (1964).

We adopted the contract theory in *Shapiro,* finding that the legislature intended to impose duties upon KPERS which were legally enforceable. We adhere to that determination.

Did plaintiffs and the classes they represent have vested contract rights which could not be altered unilaterally, and which were within the protection of the contract clause, applicable to the states under the Fourteenth Amendment? We hold that they did.

Plaintiff Singer was over 49 years of age and had over 22 years of continuous service with the Topeka Fire Department at the time the petition was filed. He passed his 23d service anniversary and his 50th birthday before trial. Under the local plan, effective when he went to work and throughout his years of service, he is eligible for retirement. Warner was 39 years of age and had over 16 years of service when this action was commenced; Kuehl was 39 and had 11 years of service; and Perkins was 34 and had 11 years of service. Each had contributed 3% of his salary throughout to the local pension plan. The parties stipulated that one of the inducements for each of the plaintiffs to accept and remain in employment with the City fire or police department was the pension plan of which each was a member as a result of that employment.

Jurisdictions adopting the contract theory vary greatly as to the time of vesting and the restrictions upon amendment after commencement of employment. Arizona, in *Yeazell v. Copins,* 98 Ariz. 109, adopts a strict contract theory under which all elements of the contract vest upon employment and are not subject to future change without consent of the employee.

Other courts hold vesting does not occur until retirement. *Tait v. Freeman,* 74 S.D. 620, 57 N.W.2d 520 (1953), rejects the contention that a right to a continuing pension system exists where the employee has fulfilled the service requirement but has not reached retirement age.

An earlier date for vesting is recognized in Arkansas. Amendments making plaintiff ineligible for benefits subsequent to having fulfilled his service requirement but prior to his actual retirement were found an impairment of contract in *Jones v. Cheney,* 253 Ark. 926, 489 S.W.2d 785 (1973). The court notes that

the plan under review was funded entirely by contributions from the employee, making it more in the nature of an annuity. Arkansas relies upon a similar Pennsylvania case, *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954). See also *Dorsey v. State ex rel. Mulrine,* 283 A.2d 834 (Del. 1971).

California and some other jurisdictions hold that a contract right to a pension arises upon membership in the plan and the furnishing of services, but reasonable modification prior to retirement for the purpose of keeping the system flexible and accommodating changing conditions are allowed. *Allen v. City of Long Beach,* 45 Cal. 2d 128, Syl. ¶ 1, 287 P.2d 765 (1955); and see Annot., Vested Right of Pensioner to Pension, 52 A.L.R.2d 437, §§ 5 and 34.

Judge Bullock relied in part on the case of *Miller v. State of California,* 18 Cal. 3d 808, 135 Cal. Rptr. 386, 557 P.2d 970 (1977), in which the California Supreme Court, quoting from an earlier opinion, said:

" '[A]n employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer.' " 18 Cal. 3d at 815.

We are convinced that the employee has vested contract rights prior to actual retirement. In the case before us, Singer, having worked as a city fireman and having contributed a part of his salary to the plan for more than 20 years, and being eligible to retire and to receive the benefits of that status, has an actual, bona fide, and vital interest in the plan.

We are not convinced that all elements of the contract vest upon the first day of employment, which appears to be the Arizona rule. Continued employment over a reasonable period of time during which substantial services are furnished to the employer, plan membership is maintained, and regular contributions into the fund are made, however, cause the employee to acquire a contract right in the pension plan. Here all plaintiffs have been employed and have served the City for many years; all are members of the local plan; and all have contributed to the fund the required percentage from their salaries over the period of employment. Their rights are substantial and are vested and subject to the protection afforded by the contract clause of the United States Constitution, art. I, § 10, which provides:

"No State shall  .  .  .  pass any  .  .  .  Law impairing the Obligation of Contracts  .  .  .  ."

Contracts of municipalities are within the ambit of that clause. See *Flanigan v. Leavenworth Recreation Commission,* 219 Kan. 710, 715, 549 P.2d 1007 (1976), citing as the foundation case for that principle *Broughton v. Pensacola,* 93 U.S. 266, 23 L.Ed. 896 (1876).

New members were not accepted into the local plan after 1966, and therefore all members of both classes had been employed as city policemen or firemen for over 11 years when this action was filed. We conclude that plaintiffs and the designated classes possessed vested contractual rights at the time this action was commenced.

Next, we consider whether the state or a municipality may unilaterally change or modify a pension plan in which employees hold vested contract rights, and whether there are limitations upon such action. *Yeazell v. Copins,* 98 Ariz. 109, states the Arizona rule: No change in the plan may be made by the state without the consent of the employee.

The California rule, set forth in the *Long Beach* case and noted above, is that "reasonable modifications" may be made prior to retirement for the purposes of keeping the system flexible and of accommodating changing conditions while maintaining the integrity of the system. As to the reasonableness of changes, the court says:

"To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." 45 Cal. 2d at 131.

*Long Beach* held invalid legislation increasing the employee's contribution from 2% to 10% of salary, with no increased benefits and no showing that the city would be unable to meet its obligations under the existing plan without the increased contribution. *Abbott v. City of Los Angeles,* 50 Cal. 2d 438, 326 P.2d 484 (1958), held invalid an amendment making pension benefits fixed rather than flexible and based upon changes in salary scales. *Wisley v. City of San Diego,* 188 Cal. App. 2d 482, 10 Cal. Rptr. 765 (1961), invalidated increases in employee contributions without corresponding benefits. *City of Downey v. Board of*

*Administration,* 47 Cal. App. 3d 621, 121 Cal. Rptr. 295 (1975), approved amendments increasing employee contributions and also increasing benefits, reducing the mandatory retirement age, and granting benefits to surviving spouses.

In *Abbott,* the court specifically rejected the contention that the overall benefit be balanced against the overall detriment. The court said:

"[I]t is by advantage or disadvantage to the individual employes whose already earned and vested pension rights are involved that the validity of attempted changes in these rights depends, and benefits subsequently obtained by other employes cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued." 50 Cal. 2d at 453.

We do not adopt the balancing test of *Abbott;* instead, we hold that, insofar as the rights of active employees in and to pension plans are concerned, the reasonableness of legislative changes is to be measured by the advantage or disadvantage to the affected employees as a group or groups; validity of change is not dependent upon the effect upon each employee.

The California rule, as set forth in *Long Beach,* 45 Cal. 2d 128, is logical and fair, and we adopt it. The rule is set out at length above and need not be repeated in full. We hold that the state or a municipality may make reasonable changes or modifications in pension plans in which employees hold vested contract rights, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages.

Do the challenged statutes impose a substantial detriment on plaintiffs and the classes without correlative benefit? Amendments which more than double employee contributions without increasing benefits do just that, and run afoul of the rule; not all changes, however, do so. We must therefore examine the statutes and their respective effects on the plaintiffs and the classes.

K.S.A. 1977 Supp. 13-14a02 and -14a06 raised the contribution rate of plaintiffs and both classes during the calendar year 1978. No offsetting benefits were provided. Clearly K.S.A. 1977 Supp. 13-14a02 and -14a06 are unconstitutional as applied, for those statutes impair the contract rights of the plaintiffs and the classes.

We have not overlooked the City's claim that the actuarial soundness of the local plan, mandated by K.S.A. 1977 Supp. 13-14a02, is advantageous to the plaintiffs. As the trial court pointed out, there was no evidence that the City will not be able

to meet its obligations in the future, no evidence that plaintiffs' pensions are in jeopardy, no evidence that plaintiffs would receive any benefit from an actuarially sound system which plaintiffs would not otherwise receive. We agree that there were valid reasons for the legislature to require pension plans to be actuarially sound; but the change is not shown to be a benefit to these plaintiffs. Similarly, a proposed increase in member contributions without benefit increases was held presumptively invalid by the Supreme Judicial Court of Massachusetts in *Opinion of the Justices,* 364 Mass. 847, 303 N.E.2d 320 (1973), when it was not shown that the proposed increase was necessary to the successful functioning or integrity of the plan.

K.S.A. 1977 Supp. 12-5004 abolishes the local plan, abolishes the local board which administered the plan, directs that all funds and assets be transferred to KPERS, and authorizes KPERS to administer the fund and perform all functions formerly performed by the local board, on or after the date on which the City affiliates with KP&F. This transfer has been effected as of January 1, 1979; all retired Topeka firemen and policemen now receive their pensions from KPERS, and all special and full members' contributions are paid by the City to KPERS. The City also pays its contribution to KPERS rather than to the local board.

The plaintiffs have rights which may not be impaired to the pensions which were held out to them during their first 11 years of employment, but we see no reason why legislation cannot change the designation of the board which is to administer the plan. Whether administration is handled by the original local board, by the city treasurer, the county treasurer, a state board, or the trust department of a local bank, is not a vital part of the contract so long as sufficient funds are provided and the promised pensions are paid. We conclude that the change in administration of the pension plan is a reasonable modification which does not impair the integrity of the system; it is simply a reorganization, a housekeeping change, well within the legislative prerogative. 73 C.J.S., Public Administrative Bodies and Procedure § 23; 81A C.J.S., States § 82; 63 Am. Jur. 2d, Public Officers and Employees § 33.

K.S.A. 1977 Supp. 12-5005(*b*) requires the City to deduct 7% from the salaries of the plaintiffs and of the members of class II, commencing on the date the employees became "special mem-

bers" of KP&F—in this case, January 1, 1979. As the parties stipulated, no added benefits accrue to the employees. This is a modification of a vital element of the original plan, disadvantageous to the employees and with no offsetting advantages. We hold that K.S.A. 1977 Supp. 12-5005(*b*), as applied to the plaintiffs and the members of class II, is an unconstitutional impairment of contract rights.

In summary, we hold that plaintiffs and both classes cannot be subject to increased deductions without offsetting benefits, and that K.S.A. 1977 Supp. 13-14a02 and -14a06 as applied to plaintiffs and both classes, and K.S.A. 1977 Supp. 12-5005(*b*) as applied to plaintiffs and class II, are unconstitutional. It follows that the sums in excess of 3% of wages which the City withheld must be refunded, along with the agreed interest. Plaintiffs and class II may not be required to contribute more than 3% of their salaries in the future, under existing law. They have a continuing conditional entitlement to the benefits provided by the local plan, payable upon death, injury, or retirement. Payment will now be made by KPERS, rather than by the local board.

We hold further that K.S.A. 1977 Supp. 12-5004, however, is not invalid. The local board has been abolished and its function transferred to KPERS; the City will hereafter contribute to KPERS, as required by law; and plaintiffs and class II, together with all retired former members of the local plan, will continue as "special members" of KP&F, and will receive the benefits to which they are or shall become entitled from that agency or its parent, KPERS.

The judgment of the district court that K.S.A. 1977 Supp. 13-14a02 and 12-5005 are unconstitutional as applied is affirmed; the judgment that K.S.A. 12-5004 is unconstitutional is reversed; and the case is remanded with directions to enter judgment in conformity with this opinion.