Mr. Meredith Williams Executive Secretary Kansas Public Employees Retirement System Capitol Tower, Suite 200 400 S.W. 8th Street Topeka, Kansas 66603-3925
Dear Mr. Willliams:
As executive secretary for the Kansas public employees retirement system (KPERS), you request our opinion regarding the manner in which the retirement benefits of certain judges are determined. Specifically, you ask whether judges who were members of the retirement system for judges before July 1, 1975, but who had not retired until after July 1, 1975, are to have their retirement benefits based upon the final average salary as determined pursuant to the formula set forth in K.S.A. 20-2610, or upon the final average salary as determined pursuant to the formula applicable prior to July 1, 1975.
Prior to 1975, the retirement system for judges was administered by the Kansas judges retirement board, and retirement benefits were paid from the Kansas judges retirement fund. Each judge was obligated to contribute 6% of his or her salary to the fund. L. 1974, ch. 390, sec. 12. The monthly retirement benefit owed a judge upon retirement was "an amount equal to three and one-third percent (3 1/3%) of the monthlysalary he was receiving when he last served as judge, multiplied by the number of his total years of service, but such monthly benefit shall not exceed sixty-five percent (65%) of the monthly salary such judge was receiving when he last served as judge." L. 1974, ch. 143, secs. 1, 2 (emphasis added).
With the enactment on July 1, 1975, of K.S.A. 20-2601a and 20-2601b, the judges retirement board and fund were abolished, and KPERS was obligated to administer the retirement system for judges. The judges continued to be obligated to contribute 6% of their salary into the retirement fund. L. 1975, ch. 190, sec. 5. However, retirement benefits were to be based upon the final average salary as determined pursuant to the formula set forth in K.S.A. 20-2610, and were generally based on an average compensation received by the judge:
 "(b) For any judge who retires under K.S.A. 20-2608 or 20-2609, as amended, on or after July 1, 1975, the annuity shall be based on the final average salary of such judge as provided in this subsection. . . . Final average salary shall mean the average highest annual salary paid to the judge for any five (5) years of the last ten (10) years of service as a judge immediately preceding retirement or termination of employment, or if service as a judge is less than five (5) years, then the final average salary shall be the average annual salary paid to the judge during the full period of service as a judge, or if service is less than one year, then the final average salary shall be computed by multiplying the amount of monthly salary such judge was receiving at the time of retirement by twelve (12). . . ." L. 1975, ch. 190, sec. 9.
The general effect of the formula enacted in 1975 is to decrease the salary base upon which the retirement benefits are figured, thereby reducing the monthly retirement benefits paid to the judges. In 1987, the number of years of salary averaged in determining final average salary was reduced to four. L. 1987. ch. 299, sec. 5.
There are three theories regarding the existence of pension retirement plans for public employees. A number of jurisdictions recognize the pension retirement plan as merely a gratuity or bounty which may be altered or withdrawn at any time. City of Dallas v. Trammell,101 S.W.2d 1009 (Tex. 1937). A second theory holds that the pension retirement plan is a part of the contemplated compensation for the employee's service and so in a sense is a part of the contract of employment itself. The pension, being an integral portion of the contemplated compensation, cannot be destroyed once it has vested without impairing a contractual obligation. Kern v. City of Long Beach,179 P.2d 799 (Cal. 1947). The final theory rejects labeling the pension as gratuity or contract, choosing instead to consider legislative policy. This theory also rejects the idea of "vested rights," preferring to recognize a "moral obligation." Spina v. Consolidated Police andFiremen's Pension Fund Commission, 197 A.2d 169 (N.J. 1964). Although Kansas initially recognized pension retirement plans for public employees as a "gratuitous allowance" with no possibility of vested rights, State,ex rel., v. Board of Education, 155 Kan. 754 (1942), Kansas has since adopted the second theory, recognizing that the pension retirement plan creates a contract between the public employee and employer. Shapiro v.Kansas Public Employees Retirement System, 216 Kan. 353, syl. para. 1 (1975); Singer v. City of Topeka, 227 Kan. 356, syl. para. 1 (1980;Brazelton v. Kansas Public Employees Retirement System, 227 Kan. 443, 448
(1980).
Among those jurisdictions that recognizes a pension retirement plan as creating a contractual relationship, there has been some variation in determining when the public employee gains a vested right in the plan. Some jurisdictions recognize a vested right immediately upon the acceptance of employment while others do not recognize a vested right until the employee meets all of the contingencies for retirement. Kansas has settled for a middle ground, recognizing that "continued employment over a reasonable period of time during which substantial services are furnished to the employer, plan membership is maintained, and regular contributions are made . . . cause the employee to acquire a contract right in the pension plan." Singer, 227 Kan. at 365. Once a public employee gains a vested right in a pension retirement plan, the employee is deemed to have an interest "which it is proper for [the] state to recognize and protect and of which [an] individual cannot be deprived arbitrarily without injustice." Black's Law Dictionary 1402 (1979).
Despite the fact that a public employee has gained a vested right in a pension retirement plan prior to actual retirement, the provisions of the plan are not set in stone. See 60A Am.Jur.2d Pensions and RetirementFunds, secs. 1610, 1623 (1988). The ability to modify a pension retirement plan is necessary because "there may be times when changes are necessary to protect the financial integrity of the system or for some other compelling reason which would mandate and justify some unilateral changes." Brazelton, 227 Kan. at 453. In effect, the employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable benefit. Kern, 179 P.2d at 803. The state may make reasonable changes or modifications in pension retirement plans in which employees hold vested contract rights, but changes which result in disadvantages to employees must be accompanied by off-setting or counterbalancing advantages. Singer, 227 Kan. at 367. To be sustained as reasonableness, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation. Id. at syl. para. 4. The reasonableness of legislative changes is to be measured by the advantage or disadvantage to the affected employees as a group or groups; the validity of a change is not dependent upon the effect upon each employee. Id., 227 Kan. at 367. Reasonable modifications of retirement plans for public employees have been found in: Amundsen v. Public Employees' Retirement System,106 Cal.Rptr. 759 (Cal.App. 1973) (raising age of retirement and increasing amount of pension benefits); and Downey v. Board ofAdministration, 121 Cal. Reptr. 295 (Cal.App. 1975) (reducing amount of pension benefits but instituting death benefits and surviving spouse benefits). Modifications have been rejected in: Allen v. Long Beach,287 P.2d 765 (Cal. 1955) (employee contributions raised from 2% of salary to 10% of salary with no off-setting advantage); Opinion of the Justices,303 N.E.2d 320 (Mass. 1973) (employee contribution raised to 7% from 5% with no off-setting advantage); Re State Employees' Retirement Plan,364 A.2d 1228 (Del. 1976) (payment of benefits out of pension funds to non-contributing ineligible beneficiaries); Eagan v. Spellman,581 P.2d 1038 (Wash. 1978) (lowered age of mandatory retirement; making it impossible for employee to obtain full pension); Brazelton, supra
(ended system's tie-in with social security, resulting in increase in both contributions and benefits, but required employees to make up a shortfall; no option offered to employees).
The retirement system for judges is set forth in K.S.A. 20-2601 etseq. Each judge is required to contribute 6% of the judge's salary for each payroll period to the retirement fund. K.S.A. 1991 Supp. 20-2603. By providing services to the state, maintaining membership in the plan, and making required contributions to the fund, judges are able to gain a vested right in the retirement fund. Once the vested right has been earned, provisions of the plan affecting the judges may be modified, but such modifications must be reasonable, i.e., must bear some material relation to the theory of a pension system and its successful operation. If the modifications result in a disadvantage to the judges, the disadvantage must be accompanied by an off-setting advantage.
As noted above, the effect of the formula for final average salary set forth in L. 1975, ch. 190, sec. 9 was to reduce the base salaries upon which the members' retirement benefits were figured, thereby reducing the amount of monthly benefit paid to the members. This, of course, resulted in a disadvantage to the members. However, in the same legislative act, the provisions regarding limits on outside income were rewritten and a lump-sum death benefit was instituted. L. 1975, ch. 190, secs. 9, 10. The disadvantage to the members was accompanied by off-setting advantages. The provision enacted in L. 1987, ch. 299, sec. 5, reducing to four the number of years averaged in determining the final average salary, does not result in a disadvantage to the members. The modifications to the plan were therefore permissible. The retirement benefits owed to judges who were members of the system prior to July 1, 1975, but who did not retire until after July 1, 1975, are to be based upon the final average salary as determined pursuant to the formula set forth in K.S.A. 20-2610.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS:jm