The Honorable Dave Kerr State Senator, 34th District 72 Willowbrook Hutchinson, Kansas 67502
Dear Senator Kerr:
As senator for the 34th district, you request our opinion regarding the establishment by unified school districts of early retirement incentive programs pursuant to K.S.A. 72-5395 et seq. Specifically, you ask: (1) whether a plan which provides for payment of benefits in future fiscal years violates the cash-basis law; (2) whether an employee may take a leave of absence and continue such status until the employee becomes eligible for benefits under the early retirement incentive program; (3) whether the limitation set forth in K.S.A. 1994 Supp. 74-4914 on compensation receivable by a retirant is applicable to a person receiving benefits from an early retirement incentive program; and (4) whether K.S.A. 72-5395 et seq. may be repealed by the legislature.
The board of education of any unified school district is authorized pursuant to K.S.A. 1994 Supp. 72-5395 to establish an early retirement incentive program for the benefit of the employees of the district "for the purpose of reducing, in whole or in part, the penalty under the federal insurance contributions act or the Kansas public employees retirement system, or both, for retirement prior to the the normal retirement age of 65 years." The program may provide for cash payments either in the form of a lump sum at the beginning of the fiscal year or in regular payments during the fiscal year. K.S.A. 1994 Supp. 72-5395. In Attorney General Opinion No. 89-18 it was opined that the provisions of K.S.A. 72-5395 et seq. do not limit the agreement for such benefits to a one-year period, but may run for the term of a negotiated agreement between the board of education and a professional employees' organization without conflicting with the continuing contract law for teachers, K.S.A. 72-5410 et seq.
Cash-Basis Law
The cash-basis law generally prohibits a municipality from entering into a contract which creates an indebtedness in excess of the funds actually in its treasury at that time for a particular purpose, K.S.A. 10-1113, and has the effect of voiding any contract which violates the cash-basis law. K.S.A. 10-1119.See also Greenlee v. Board of Clay County Commissioners,241 Kan. 802, 807-08 (1987); U.S.D. No. 207 v. Northland National Bank,20 Kan. App. 2d 321, 326 (1994). The statutory definition of municipality includes a school district. K.S.A. 1994 Supp.10-1101; U.S.D. No. 207, 20 Kan. App. 2d at 325 (1994).
The cash-basis law does not prohibit a municipality from entering into an agreement which provides for the payment of funds in future fiscal years provided the obligation to pay is dependent on a contingency and funds necessary to meet the obligation will be available after such contingency is met. City of Wichita v.Wyman, 158 Kan. 709, 712-13 (1944); International Association ofFirefighters v. City of Lawrence, 14 Kan. App. 2d 788, 801-02
(1990); see Gragg v. U.S.D. No. 287, 6 Kan. App. 2d 152, 154 (1981). A contingency is something that may or may not happen; an event which may occur; a possibility. Deluxe Black's Law Dictionary 320 (6th Ed. 1990). The municipality may estimate the amount it will actually be obligated to pay following the occurrence of a contingency. This lack of certainty in budget appropriations does not violate the cash-basis law. International Association,14 Kan. App. 2d at 801.
The time for commencement of the right of an employee of a school district to receive payment of a pension is determined by the provisions of the plan granting the right. 78 C.J.S. Schools andSchool Districts sec. 345 (1995). The legislature has left to the individual school districts the discretion of establishing an early retirement incentive program and the form such a plan may take. A determination whether an early retirement incentive program violates the cash-basis law is dependent on the terms of the specific plan. The cash-basis law does not prohibit a unified school district from establishing an early retirement incentive program which outlines payment of pension benefits over a period exceeding one fiscal year provided the obligation to pay the pension benefits is subject to the occurrence of a contingency,i.e., the retirant meets all the qualifications established in the plan for receiving benefits and the retirant survives to the periodic dates designated in the plan for payment of the pension benefit. Because payment of the pension benefits would be contingent on the future occurrence of an event, the unified school district would have available at the time of the occurrence of the contingency the funds necessary to meet its obligations under the early retirement incentive program.
Leave of Absence
Four acts control the formation, continuation, and termination or nonrenewal of teachers' contracts: the continuing contract law, K.S.A. 72-5410 et seq.; the professional negotiations act, K.S.A.72-5413 et seq.; the due process procedure and contract termination act, K.S.A. 72-5436 et seq.; and the evaluation of certificated personnel act, K.S.A. 72-9001 et seq. Miller v.U.S.D. No. 470, 12 Kan. App. 2d 368, 369 (1987). Contracts for employment of administrators are subject to the continuing contract law, K.S.A. 72-5410 et seq., the administrators' contracts nonrenewal procedure, K.S.A. 72-5451 et seq., and the evaluation of certificated personnel act, K.S.A. 72-9001 et seq. Provisions of these acts must be construed together in determining the authority of a board of education to enter into an agreement which permits a teacher or administrator to take a sabbatical or leave of absence until such time as the teacher or administrator is eligible to receive benefits under the school district's early retirement incentive program.
A sabbatical or leave of absence does not mean a permanent separation from employment, but rather signifies a temporary absence from duty with an intention to return, during which time compensation may be suspended. 63A Am.Jur.2d Public Officers andEmployees sec. 180 (1984). A board of education for a unified school district may include within the terms of an employment contract provisions regarding sabbaticals or leaves of absence.See Hamann v. Crouch, 211 Kan. 852 (1973); VI Opinions of the Attorney General 614 (1970). Since 1980, "extended, sabbatical, and other leave" have been expressly included among the terms and conditions of professional service subject to negotiation between a board of education and a professional employees' organization. K.S.A. 75-5414; see K.S.A. 72-5413; L. 1980, ch. 220, sec. 1.
It is clear that an employment contract between a board of education and a teacher or administrator may include provisions for sabbaticals or leaves of absence. However, unlike provisions applicable to KPERS, see K.S.A. 1994 Supp. 74-4902, there appears to be no statutory provision expressly regulating the time a sabbatical or leave of absence may run. Because the legislature has not established a time frame for extended, sabbatical, and other leave, the length of time permitted for such leave will be governed by the terms of the agreement entered into by the board of education and the teacher or administrator. Regarding teachers, the terms of the agreement are subject to the terms of a collectively negotiated agreement which has been properly ratified. NEA-Wichita v. U.S.D. No. 259, 225 Kan. 395, 400
(1979). Absent a collectively negotiated agreement entered into pursuant to the professional negotiations law, K.S.A. 72-5413 etseq., the individual teacher has the option of accepting the unilateral contract offered by the board of education or proceeding under the continuing contract law, K.S.A. 72-5410 etseq. Id. Terms of employment of administrators are not subject to a collectively negotiated agreement, see K.S.A. 72-5413, but are subject to the continuing contract law. See K.S.A. 72-5410. Because contracts for employment of teachers, including administrators, continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and the contracts are deemed to continue for the next succeeding school year unless written notice of intention to terminate a contract of employment is served upon the proper party within the prescribed time, K.S.A. 72-5411, a sabbatical or leave of absence may effectively continue for a number of years.
Employment of a teacher during extended, sabbatical, and other leave is subject to the provisions of K.S.A. 72-5412.
 "All contracts shall be binding on both the teacher and board of education of the school district until the teacher has been legally discharged from such teacher's teaching position or until released by the board of education from such contract. Until such teacher has been discharged or released, such teacher shall not have authority to enter into a contract with the board of education of any school district for any period of time covered in the original contract. . . ." K.S.A. 72-5412 (emphasis added).
Teacher is defined in the continuing contract law to "include teachers, supervisors, principals, superintendents and other professional employees who are required to hold a teacher's or school administrator's certificate. . . ." K.S.A. 72-5410. Until such time as a teacher as defined in K.S.A. 72-5410 is discharged or released from a contract of employment, the teacher may not enter into a contract of employment with the board of education of another unified school district.
Compensation
The legislature has modified eligibility criteria for persons retiring under the Kansas public employees retirement system (KPERS), allowing retirants to receive full benefits from KPERS before age 65. See K.S.A. 1994 Supp. 74-4914. The possibility exists that a person may be retired and receiving benefits under both KPERS and the early retirement incentive program of a unified school district. K.S.A. 1994 Supp. 74-4914 places a limitation on the amount of compensation a retirant may be paid while remaining eligible to receive a monthly retirement benefit from KPERS. During calendar year 1994 and all calendar years thereafter, a retirant may receive up to $11,160 and remain eligible for KPERS monthly benefits. The limitation on compensation set forth in K.S.A. 1994 Supp. 74-4914 is applicable only to a member of KPERS who has retired under KPERS and who is receiving compensation from a participating employer for whom the retirant was employed or appointed during the final two years of the retirant's participation in KPERS. Application of the limitation is not restricted to those instances in which the retirant is employed in the same position but rather is applicable when the retirant "is employed or appointed [by a designated participating employer] in or to any position or office for which compensation for service is paid. . . ." K.S.A. 1994 Supp. 74-4914 (emphasis added). The limitation does not include compensation received for services as a substitute teacher or an officer, employee, appointee or member of the legislature or any elected official. Id.
While K.S.A. 1994 Supp. 74-4914 establishes a limitation on the amount of compensation a retired member of KPERS may receive from certain employers, state statute does not expressly provide who is responsible for contacting KPERS when the limitation is reached. Forms provided by KPERS to designated agents of participating employers indicate the obligation is on the participating employer. See KPERS-15S Election to Suspend a Retirement Benefit (Rev. 7-94). While rules and regulations adopted by an administrative agency to carry out the policy declared by the legislature in the statutes have the force and effect of law, Tewv. Topeka Police Fire Civil Service Commission, 237 Kan. 96, 100
(1985), forms which have not been submitted pursuant to K.S.A. 1994 Supp. 77-415 et seq. do not. See Attorney General Opinion No. 94-12. The secretary of revenue is obligated to provide upon request of the executive secretary of KPERS information necessary to carry out the provisions of K.S.A. 1994 Supp. 74-4914. K.S.A. 1994 Supp. 74-4914. While the information will assist KPERS at the end of the year in determining which retirants have exceeded the earnings limitation and may be subject to the recoupment procedure set forth in K.S.A. 74-4924, no one has been given the legal obligation of providing KPERS with notice at the time a retirant has reached the earnings limitation set forth in K.S.A. 1994 Supp. 74-4914.
Repeal
In determining whether the legislature may amend or repeal provisions of K.S.A. 72-5395 et seq., it must be determined whether the statutes constitute a contractual arrangement subject to the protections of section 10 of article 1 of the United States constitution.
Three statutes address early retirement incentive programs: K.S.A. 1994 Supp. 72-5395 authorizes the establishment of the programs; K.S.A. 72-5396 permits school districts to budget and expend funds for the programs; and K.S.A. 72-5397 states "[n]othing in [K.S.A. 72-5395 et seq.] shall be construed to create any right, or to authorize the creation of any right, which is not subject to amendment or nullification by act of the legislature." While it would appear that K.S.A. 72-5397 reserves to the state the authority to amend or nullify early retirement incentive programs, such authority must be reviewed in light of the court's determination regarding the interests of public employees in governmental retirement programs.
It has been determined by the Kansas Supreme Court that governmental retirement systems create contracts between the governmental entity and its employees who are members of the systems. Galindo v. City of Coffeyville, 256 Kan. 455, 468
(1994); Brazelton v. Kansas Public Employees Retirement System,227 Kan. 443, Syl., para. 1 (1980); Singer v. City of Topeka,227 Kan. 356, 363 (1980); Shapiro v. Kansas Public EmployeesRetirement System, 216 Kan. 353, Syl., para. 1 (1975). When a person accepts employment with a governmental entity and becomes a participating member of a retirement system, he or she gains certain rights which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member-employee. Galindo, 256 Kan. at 468. Retirement benefits are a valuable part of the consideration for entering into and continuing in public service, and a participating member of a governmental pension system has certain vested rights in the pension plan. Id. The rights are substantial and are vested and subject to the protection afforded by the contract clause of section 10 of article 1 of the United States constitution. Singer, 227 Kan. at 365; Brazelton,227 Kan. at 451. The unilateral retroactive change of vested retirement benefits under an employment contract in a substantial manner by a governmental employer to the disadvantage or detriment of its employees violates the contract clause of the United States constitution. Brazelton, 227 Kan. at 451. Based on these decisions, we determine that an employee of a unified school district gains through continued service to the school district certain vested rights in the early retirement incentive program established by the school district and entered into by the employee and school district. Such rights are afforded the protection of the contract clause of the United States constitution and may not be retroactively changed in a substantial manner by the unified school district.
The fact that members of a public retirement system may have vested rights in a retirement plan does not preclude modification or amendment of the plan. The state may make reasonable changes or modifications in pension plans in which employees hold vested contract rights, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages. Galindo, 256 Kan. at 468; Singer, 227 Kan. at 367. The reasonableness of legislative changes is to be measured by the advantage or disadvantage to the affected employees as a group or groups; validity of change is not dependent upon the effect upon each employee. Singer, 227 Kan. at 367. K.S.A. 72-5397 reserves to the state the authority to make such modifications.
Review
In your request for an opinion, you present a number of issues regarding early retirement incentive programs established by unified school districts. In our consideration of your request, the issues were grouped into four major areas. In this review, we apply the above analysis to your specific questions.
The cash-basis law does have an impact on an early retirement incentive program established by a board of education. However, the fact that benefits payable under such plan are payable in future fiscal years does not necessarily entail a violation of the cash-basis law. If benefits under the plan are not due and owing until the happening of a contingency, the board of education may estimate its obligation in any given year and have such funds available at the time the contingency occurs.
A contract for employment of a teacher or administrator may provide for sabbaticals or leaves of absence. There is no statutory limitation regarding the length of time a sabbatical or leave of absence may run. Therefore, a teacher or administrator may be placed on leave until such time as the teacher or administrator qualifies for benefits under an early retirement incentive program. Sabbaticals or leaves of absence extending for more than one year may affect benefits receivable from KPERS because of the time limitation set forth in K.S.A. 1994 Supp.74-4902.
Retirants under KPERS may receive up to $11,160 in a calendar year from the participating employer from which the retirant was employed during the retirant's final two years of participating service. The compensation limitation includes compensation paid for any service provided the participating employer by the retirant. However, no one has been statutorily designated or obligated to notify KPERS when a retirant reaches the compensation limitation. If KPERS becomes aware of an overpayment, recoupment may be achieved pursuant to K.S.A. 74-4924.
Persons who accept and continue employment with a unified school district gain vested rights in the early retirement incentive programs established pursuant to K.S.A. 1994 Supp. 72-5395 et seq. Thus, while K.S.A. 72-5395 et seq. may be amended or repealed by the legislature, any disadvantage to those who have vested rights in the program must be offset by counterbalancing benefits.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm