CITY OF MILWAUKEE, Respondent, v. FIREMEN RELIEF ASSOCIATION OF THE CITY OF MILWAUKEE, Appellant.

*No. 170. Argued February 4, 1969.—Decided March 7, 1969.*
(Also reported in 165 N. W. 2d 384.)

For the appellant there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *L. C. Hammond, Jr.,* and *John S. Holbrook, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Richard F. Maruszewski, John F. Cook,* and *Maurice L. Markey,* assistant city attorneys, attorneys, and *Harry G. Slater,* deputy city attorney, of counsel, and oral argument by *Mr. Maruszewski.*

HEFFERNAN, J.   In the portion of this case appealed earlier, we commended the opinion in the *Associated Hospital Service Case* to the attention of the trial court. In that case, this court concluded that, under sec. 74.73, Stats., a taxpayer was not entitled to recover interest from a city for the city's use of the money refunded to the taxpayer.

The majority of the court relied, as did the trial court in this instance, upon *Schlesinger v. State* (1928), 195 Wis. 366, 218 N. W. 440.  The rationale of that case was

simply that the failure of a tax refund statute to provide
for the payment of interest is indicative of the legisla-
ture's intent to deny interest. Citing cases from other
jurisdictions, we stated, at page 369, "Such a statute
'plainly indicates that interest is not recoverable.' "

The majority opinion in *Associated Hospital Service*
made it clear that it considered the rule followed inde-
fensible from the viewpoint of justice or logic. Mr.
Chief Justice BROWN, speaking for the majority, stated
at page 192:

"Our preference would be to affirm the judgments of
the learned trial court, recognizing that the city ought
not to profit by the uncompensated use of the respon-
dent's money illegally exacted and withheld and the re-
spondent correspondingly injured. If we could see our
way clear to affirm the learned trial court without doing
violence to what seems to us to be the law as laid down
by the statute, sec. 74.73, in which no interest is provided
upon a refund, we would gladly do so."

Mr. Justice CURRIE, speaking for the dissenting mem-
bers of the court, pointed out that the *Schlesinger Case,
supra,* was a doubtful precedent, in that at least two then
recent cases, *Yawkey-Bissell Corp. v. Langlade* (1952),
261 Wis. 524, 53 N. W. 2d 174, and *Associated Hospital
Service v. Milwaukee* (1961), 13 Wis. 2d 447, 109 N. W.
2d 271, were in direct conflict with *Schlesinger,* inasmuch
as they permitted the taxpayer to collect interest upon the
refund of illegally paid taxes. In view of this tangle of
conflicting precedent, Mr. Justice CURRIE pointed out
that the court was not bound by the rule that the inter-
pretation of a statute given by the court becomes a part
of the statute itself when the legislature does not subse-
quently act to amend the statute. Under the state of
precedential history existing in 1962, where the mandates
of this court were in conflict, it could not be said in
which of the conflicting precedents the legislature had
acquiesced.

Moreover, it should now be noted that the legislature has at last spoken and has clearly expressed its view that the interpretation given by this court to sec. 74.73, Stats., in *Associated Hospital Service v. Milwaukee* (1962), 18 Wis. 2d 183, 118 N. W. 2d 96, does not constitute the expression of the present legislative will. The legislature, by ch. 157 of the Laws of 1967, amended sec. 74.73 to provide that a taxpayer is entitled not only to a refund of the principal as he was theretofore, but also "interest at the legal rate computed from the date of filing the claim."

It thus appears that precedents that were, in 1962, at best dubious interpretations of the legislative will are now clearly contrary to the expressed legislative intent.

The question before us is a broader one than that now controlled by the statute permitting the payment of interest on tax refunds payable pursuant to the procedures of sec. 74.73, Stats.

In the instant case, the city of Milwaukee, for a period of over sixty years, has withheld money that by statute rightfully ought to have been paid to the Firemen's Relief Association. The principal sum owed for the years not barred by limitation is acknowledged to be payable, but it is contended, following the rationale of *Associated Hospital Service* and *Schlesinger,* that no interest is payable on an obligation of a municipal corporation unless such obligation of payment is clearly imposed by statute. The question raised on this appeal is simple to state, but poses a question that has long remained subject to inconsistent and contradictory answers. That question is: Does a municipal corporation, as that term is used in *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, referring to all units of government in Wisconsin, including the state, have the same obligation to pay interest on its debts that falls upon every other person or corporation within the state?

There seems to be little uniformity in the rule from jurisdiction to jurisdiction. Michigan, for example, treats

the obligation of government to pay interest in the same manner that it does the obligation of the private citizen. *Banish v. City of Hamtramck* (April 5, 1968), 9 Mich. App. 381, 157 N. W. 2d 445, 454. The Pennsylvania court stated in *Mauch v. Pittsburgh Pension Board* (1956), 383 Pa. 448, 452, 119 Atl. 2d 193:

"Nor can defendant escape the duty to pay interest on the theory that as a municipal agency it is under no duty to pay it unless the statute or express contract provides for it. The reason for the rule (as applied to the state) is that 'The government is *presumed* to be always ready to pay, and it would be against public policy to declare it otherwise': *Philadelphia v. Commonwealth,* 276 Pa. 12, 14, 119 A. 723. (Italics supplied.) But here the actual facts overcome any such presumption. Defendant unjustly refused to pay until made to do so by court decision."

Some states, among them Illinois, do not permit the collection of interest from a municipal corporation except when authorized by statute or unless the fund has been unlawfully obtained by the municipality or lawfully obtained but unlawfully withheld. *Board of Trustees v. Village of Glen Ellyn* (1949), 337 Ill. App. 183, 85 N. E. 2d 473.

There is even disagreement as to what constitutes the majority rule prevailing in the country:

". . . the general rule is that a municipal corporation is not chargeable with interest on claims against it without express agreement therefor . . . ." 17 McQuillin, *Municipal Corporations* (1967 Rev. Vol.), p. 98, sec. 48.09.

"The majority rule is that a municipal corporation is to be treated like a private debtor for the purpose of applying prevailing law governing interest on general obligations, and may be held liable for interest where a private debtor would be." Rhyne, *Municipal Law,* pp. 804, 805, sec. 31–9.

"The authorities are not in accord as to the liability of a municipal corporation for interest upon claims against it in the absence of special contract or statutory

provision for interest." 38 Am. Jur., *Municipal Corporations,* Interest on Claims, p. 380, sec. 672.

It is apparent that the diversity of authority in other jurisdictions makes out-of-state precedent of little value.

The inconsistency of our own precedents is equally dismaying. In *Rice v. Ashland County* (1902), 114 Wis. 130, 89 N. W. 908, a county clerk accepted funds in payment for a deed to certain lands owned by the county. Subsequently, the deed proved to be valueless. On suit for recovery of the purchase price, the trial court awarded interest to the buyers from the time the money was paid to the clerk. This court held that judgment to be in error, that interest was payable but only upon the demand of the creditor for the refund of the principal amount paid.

In 1908, this court decided *Appleton Water Works Co. v. Appleton* (1908), 136 Wis. 395, 117 N. W. 816. The city's alleged obligation was one in contract for services. Although the court held that, since no adequate demand to pay had been made, the obligation to pay the principal and, hence, the interest on the principal had not commenced, the court said at page 399:

"Neither are we disposed to follow those cases which hold that a municipal corporation is not liable for interest on an indebtedness due from it in the absence of an express promise to pay. If the question is an open one in this state at all, no good reason is apparent why, after a claim is properly presented to a municipal corporation and payment is duly demanded, such claim should not draw interest if interest would be allowable on a like claim against an individual."

Only five years later, this court in *Wilcox v. Porth* (1913), 154 Wis. 422, 143 N. W. 165, came to what appears to be the opposite conclusion to that arrived at in the *Appleton Case,* although it cited that case as authority. In *Wilcox,* this court said, at pages 427, 428:

". . . there was no express promise to pay interest on the amount due the contractor . . . . Under the circumstances Mr. Hill was not in a position to make a claim for interest upon any express promise, nor was he in position to set interest running on the amount claimed by him by a simple demand of payment."

In 1914, *State v. Milwaukee,* 158 Wis. 564, 149 N. W. 579, was decided. It is upon this case that the appellant herein principally relies. The respondent herein contends that the rule of this case is inapplicable.

In that case the city had withheld fine money that ought to have been paid over to the state, and used it for its own municipal purposes. The statute imposing the obligation to pay over the fine monies, like the statute in the instant case requiring the payment of a portion of the fire rate, expressed no obligation to pay interest on delinquent payments. Prompt payment was apparently assumed by the legislature. Our court expressly concluded that, even in absence of any statutory direction, the city was obligated to pay the state interest on tardy instalments. The trial court had concluded that interest was payable only from the time of the commencement of the action. This court, however, held that the interest commenced to run on each instalment from the time it fell due even without demand for payment. Our court said, at pages 573, 574, 575:

"Where no time of payment is fixed, or where a claim is unliquidated, or where the question of liability is so involved in doubt that there are reasonable grounds for believing that no liability exists, a demand is, in the absence of peculiar equitable considerations, necessary to set interest running. [Citing cases] But where the time of payment is fixed by contract or by law and the amount to be paid is easily ascertainable and the duty to pay plain, no demand is necessary to start the running of interest, whether the claim be against an individual or a municipality. [Citing cases] . . . The time of payment was fixed by statute—the duty to pay was imposed by the organic law of the state, and the amount to be paid

was easily ascertainable. Under such circumstances there would have to be equitable considerations of an imperative nature in favor of the debtor to justify a court in refusing to grant interest from the time payment should have been made. . . . Sound public policy and justice alike demand that where an individual or a municipality intentionally withholds the payment of funds required by law to be paid . . . the individual or municipality . . . should be made to respond by paying the principal and interest . . . ."

Only a year later, *Reichert v. Milwaukee County* (1914), 159 Wis. 25, 150 N. W. 401, with no reference to the recently decided case of *State v. Milwaukee, supra,* held that the county was not liable for interest for delays in the performance of a contract for the purchase of land. The court stated, at page 35, that the liability of a county "for interest, is not on a par with a natural person or with a private corporation." However, the only reason expressed in the opinion for the difference is that the "county acts through its officers as agents, but agents not of its own choice."

The *Reichert Case* is the principal underpinning of *Schlesinger v. State,* and its language is quoted in *Schlesinger.* A careful examination of the *Reichert Case* reveals, however, that the court found that the county was not delinquent in its payment of principal and that, hence, under any view of the law, no interest would be payable. As a consequence, the language of *Reichert* concluding that there is no obligation of a municipal corporation to pay interest is unnecessary and the holding therein is totally dicta.

The *Schlesinger Case* followed in 1928. It involved a cause of action against the *state* for interest on inheritance taxes that had been paid under a statute found unconstitutional by the Supreme Court of the United States. *Schlesinger v. Wisconsin* (1926), 270 U. S. 230, 46 Sup. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224. In 195 Wis. 366, the Supreme Court of Wisconsin faced the

question of whether the taxpayer was entitled to interest on the payment illegally exacted. This court said:

"The great weight of authority on this question supports the rule established by the supreme court of the United States and by the English court of appeals that 'interest, when not stipulated for by contract, or authorized by statute, . . . is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its legislature, or by a lawful contract of its executive officers. . . . Sir George Jessel, Master of the Rolls, speaking for the court of appeals, summed up the law of England in this short judgment: "There is no ground for charging the crown with interest. Interest is only payable by statute or by contract.' " (p. 368.)

"The inherent vice in the cases that hold the state liable to pay interest in the absence of a statute or contract imposing that liability is in the assumption that the taxpayer 'and the government stand upon an equality with respect to interest. The truth is that in its dealings with individuals public policy demands that the government should occupy an apparently favored position. It may sue, but, except by its own consent, cannot be sued.' " (p. 371.)

"It will be noted that these cases, like those cited from other jurisdictions which adopt the same rule, do not discuss the fundamental principles that determine the right to collect interest from the sovereign. These cases 'passed upon' the question of the right to collect interest of the state or of a governmental subdivision thereof, but that question was not 'carefully considered' in these opinions . . . .

"The only case in Wisconsin that discusses the authorities and considers the fundamental rules that determine the liability of the state and of its governmental subdivisions to pay interest repudiates the rule that the state and these subdivisions are 'under the same liability to pay interest . . . as is a natural person under similar circumstances.' *Reichert v. Milwaukee County,* 159 Wis. 25, 32, 150 N. W. 401. This is the last expression of our court upon this question. It is in accord with the rules of law established by the great weight of authority every-

where. Applying the principles of that case to the question presented in this case, it leads to the conclusion that the state is not liable to pay interest on taxes illegally collected in the absence of a statute imposing that liability." (p. 373.)

Our court therein held the state exempt from liability to pay interest. The rationale of the opinion, despite the shoring up of its position by reliance upon the dicta of *Reichert,* is almost totally based upon the state's immunity as a sovereign from *suit.* As we have made absolutely clear in *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, the immunity from substantive liability is totally different from the procedural immunity that the sovereign state obtains when it is free from unconsented lawsuits in Wisconsin by virtue of art. IV, sec. 27, of the Wisconsin Constitution. In *Forseth v. Sweet* (1968), 38 Wis. 2d 676, 158 N. W. 2d 370, we pointed out that, although *Holytz* had removed the *governmental* immunity of the state for tort, it left unaffected the constitutional sovereign immunity of the state in absence of legislative consent to sue. A careful reading of *Schlesinger* reveals that it is the latter type of immunity that the court relies upon therein. The state's immunity to suit has nothing to do, except in the practical procedural aspect, with the question of the state's substantive obligation to pay interest. A discussion of the state's sovereign immunity is entirely irrelevant to the rights or obligations of municipal corporations. It is equally irrelevant when applied to counties which are not sovereign but are merely administrative minions of the state endowed with no perquisites of sovereignty except as they may be expressly conferred upon a county, a county being a legislative creature possessing no implied powers. *State ex rel. Bare v. Schinz* (1927), 194 Wis. 397, 216 N. W. 509.

The *Schlesinger Case* also placed some emphasis upon the fact that interest was unknown to the common law,

and, hence, was available only as a privilege conferred by a statute expressly abrogating the common law.

The principal relevance of *Schlesinger* is its ignoring of *Milwaukee v. State* and its reliance upon *Reichert,* which is obviously contrary to *Milwaukee v. State.*

In 1932, without reference to either *Schlesinger* or *Milwaukee v. State,* this court decided *Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 237 N. W. 277, 240 N. W. 405, and therein held that a plaintiff who had sustained an injury in tort by the negligence of the county, the adjacent landowner, was entitled to interest from the time of filing a claim with the county board. The court, in its opinion, did not discuss a single case that dealt clearly with the interest liability of a governmental unit, as distinguished from ordinary persons or business corporations. While it cited cases determining the liability for interest of cities, the court at that time did not appear to view the problem as being unique to cities or to governmental units. It merely asserted, at page 335, that:

"As plaintiffs are entitled to interest as part of their recoverable compensatory damages, if any such damages were caused by negligence which renders the defendant liable under the established law of this state, there is no need for a special statute expressly subjecting the defendant, as a municipal corporation or arm of the state, to liability for such interest."

That case relies upon the rule of *Laycock v. Parker* (1899), 103 Wis. 161, 79 N. W. 327. In restating that rule and applying it to the defendant county of Juneau, the court said, at pages 334, 335:

". . . when, because of a breach of contract or a tort, a party is liable and in default in paying . . . then full compensation will be made only by payment of the money value . . . including the interest which such an amount of money would presumably have earned in the hands of the party who was deprived of it. He does not receive full

compensation for . . . breach of contract or the tort unless he is also compensated for such interest . . . . He is entitled to . . . interest . . . [from] the time that payment thereof first became due because of the terms of a contract . . . ."

In 1934 Mr. Justice WICKHEM, in *Wauwatosa v. Union Free High School Dist.*, 214 Wis. 35, 252 N. W. 351, speaking for the court, relied upon *State v. Milwaukee, supra,* in finding that the school district was liable for interest to the city of Wauwatosa from the time that school district assets were to have been paid over to the city. The respondent city of Milwaukee, in the instant case, argues in its brief that *State v. Milwaukee* is no longer precedent, since its implied repudiation in the *Reichert Case.* A reading of the *Wauwatosa Case,* however, makes it apparent that it was relied upon by the court twenty years later. It was then a viable precedent.

This, then, is an abbreviated review of the contradictions and inconsistencies of this court's decisions in dealing with the obligation of the state and units of local government to pay interest in the absence of either a statutory or contractual obligation to do so. It is apparent that the conclusions of Mr. Justice CURRIE, in the dissent to *Associated Hospital Service v. Milwaukee* (1962), 18 Wis. 2d 183, 118 N. W. 2d 96, that our decisions in this field have failed to present either a consistent body of precedent or a uniform rationale, is amply borne out by a review of cases earlier in time than those considered by Mr. Justice CURRIE.

It is also apparent that no attempt has been made to justify past decisions on the basis of any consistent policy considerations. Considerations impelling the courts' decisions seem, however, to fall within the following categories:

1. Interest is unknown to the common law. It is a creature of the statutory law, and in absence of an express statute abrogating the common law, the rule of no interest will apply. (*Schlesinger, supra.*)

2. A government, the state at least, is a sovereign and is, hence, constitutionally immune from suit. This theory also slops over into the assumption that there is, therefore, immunity from substantive liability. (*Schlesinger, supra.*)

3. Running through all the cases denying the right to recover interest is the idea, often not clearly expressed, that a government, of whatever nature, is not an ordinary party to a lawsuit and is to be favored by the law.

4. It has been presumed in some cases that government is in all instances absolutely fair in its dealings with its citizens and it would, therefore, be against public policy to enunciate a rule of law that carries with it the implication that government might unreasonably refuse or delay payment. (*Mauch v. Pittsburgh Pension Board, supra.*)

5. There is also an underlying presumption, at least in the refund cases, that the only funds available are the funds collected which are in the exact amount needed for public purposes. Hence, to pay interest on a refund would be to divert the monies of other citizens from their public purpose.

6. Since a government must operate through its agents, who are not chosen by it and are not answerable to it, it is unfair to penalize government as a whole for the defalcations or delay occasioned by agents. (*Reichert, supra.*)

A more extensive analysis of decided cases might result in the determination of other policy factors tending to lead the courts to deny interest.

None of these reasons for denying interest convince us that units of government should be given special treatment in this regard. Moreover, the state of precedent on this subject is so contradictory that we conclude, agreeing with the position of Mr. Justice CURRIE, in his dissent to *Associated Hospital Service v. Milwaukee,* that the diverse nature of past holdings leaves us free to repudiate the less desirable rulings and from the obliga-

tion to determine this case solely on the basis of stare decisis. Moreover, as we have said above, our holding in *Associated Hospital Service* has since been superseded by amendment to sec. 74.73, Stats. We are thus free to write upon not a clean slate, but upon one that has been obscured by interlineations and strikeovers, one that is sorely in need of substantial erasures.

The rule of the common law that the charging of interest is ipso facto abhorrent to morals, religion, and the law can no longer be justified. McCormick, *Damages* (hornbook series), pp. 206, 207, sec. 51, points out that money lending that was done on the basis of a charge for use was, in a primitive, peasant, and pastoral society, almost invariably extortionate and oppressive.

The Christian church for reasons that were valid in that era espoused moral concepts that frowned on usury. As a consequence, prohibitions against interest in all forms were found in the civil statutes of the early Christian states. However, when the era of foreign trade began, particularly after the voyages of the Fifteenth and Sixteenth centuries, it was recognized that credit was needed to finance commercial enterprises, and the evil of selling the use of money was not in the extension of credit for a price, but rather was dependent upon the price at which money was lent. In general, only excessive exactions for the use of money were in fact frowned upon.

Concomitant with the development of the realization that money was a commodity that had a legitimate price in the marketplace came the realization that one who was deprived of his money through fraud, theft, or delay in payment was entitled to "interest" as payment for his deprivation of use. However, McCormick points out that ancient moral taboos inherited from the dark ages continue to stunt our law. It was on the basis of such ancient precepts that we reached the conclusion, in some cases at least, that interest was not to be allowed in absence of a specific legislative concession.

It would appear that such reasoning is untenable in our time. It would seem that the loss of use of money, whether occasioned by the delay or default of an ordinary corporation or citizen or of a state or municipality, ought to be compensated.

We are satisfied that the legislative definition of the legal rate of interest, sec. 138.04, Stats.,[1] should be construed as being declaratory of the common law as it now exists and as applicable to all legal entities, including all branches of government, unless specifically exempted by legislative enactment.

The theory of sovereign immunity in torts was exploded in Wisconsin by the opinion in *Holytz*. We consider the immunity doctrine to be equally inapplicable here. As Mr. Justice CURRIE stated in *Associated Hospital Service v. Milwaukee, supra,* pages 196, 197:

"Prior to our recent decision in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, governmental units enjoyed immunity from tort liability. In the *Holytz Case,* we determined that such governmental units should bear the same responsibility for their acts, and those of their agents, as do other persons and corporations. If this is a sound principle to apply in tort law, it is equally sound to apply it where a government illegally exacts a payment from a citizen in a situation where the statute requires that the payment be refunded. It seems highly illogical to attempt to distinguish the two situations by saying one falls in the sphere of tort law and the other in the field of quasi-contract law. This is because the underlying consideration upon which recovery in quasi contract is permitted is 'the universally recognized moral principle that one who has received a

[1] "138.04 **Legal rate.** The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in s. 138.05, in which case such rate shall be clearly expressed in writing."

benefit has the duty to make restitution when to retain such benefit would be unjust.' *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis. (2d) 535, 539, 101 N. W. (2d) 700."

The theory that the government is different than other litigants and always fair remains a carryover from the theory that "the king can do no wrong." It needs no documentation to assert that the sovereign on occasion, wilfully or not, does do a wrong, and in its dealings with citizens is not infrequently subject to criticism of the public and correction by the courts.

At one time during the frontier period of American history, our local municipalities had but a tenuous hold on life, and it was thought necessary to protect them from judgments and the imposition of interest. It is obvious that our government is in fact, whether we like it or not, our biggest business and should be subject in most instances to the usual curbs that are thought necessary to insure the proper standards of business behavior. In a democracy, the purpose of the courts should be to insure that government, as well as the citizen, live under the law.

The theory that a rule of law requiring government to pay interest was by implication a slander that government does not meet its obligations is a consideration that is based on other than factual grounds and cannot be taken seriously.

We are also obliged to face the fact that good government, from an administrative practices standpoint at least, is or should be managed in accordance with accepted business practices. Some of the cases involving tax refunds appear to be based on the theory that the city treasurer keeps all the funds in a strongbox in the city hall, and that there just is no fund from which interest payments can be made. This is no longer true. Municipalities, as the recipients of large amounts of money, are extremely conscious of the necessity of promptly investing funds whenever possible. Municipal

funds, until they are disbursed, are invariably out at interest. An overpayment of a tax obligation generates its own source of interest.

In the instant case, the Firemen's Relief Association was unlawfully deprived of the use of its money for over sixty years. During this time the city had the use of this money. The Association, as the pension administering body for the firemen, was thus deprived of its interest or investment income. During that time the city either enjoyed the income from the money or avoided other borrowing at interest when it made an unlawful use of the Association's money for its own municipal purposes. There is no reason why the funds withheld by the City should not have generated the interest now rightfully owed the Association for the deprivation of the use of its funds.

We thus conclude that the obligation of a unit of government to pay interest on liquidated obligations is identical to the obligation of other persons or business entities. The city of Milwaukee is obliged to pay interest for the sums it failed to pay during the years 1952, 1953, 1954, 1955, and 1956.

As in *Holytz*, concerning substantive tort liability, the obligation to pay interest is applicable to all forms of government, including the state. As in *Holytz*, the enforceability of the right, herein declared, to collect interest against the state is conditioned by its constitutional immunity from suit, subject to such exceptions and under terms as may be determined by the legislature.

By this decision we overrule all antecedent cases to the contrary and follow in principle the precedent of *Milwaukee v. State* as modified and expanded herein.

*By the Court.*—Judgment reversed, and cause remanded to the trial court for computation of interest not inconsistent with this opinion.