Oliver L. BOLDT, Plaintiff-Respondent and Cross-Appellant-Petitioner,

v.

STATE of Wisconsin, Defendant-Appellant and Cross-Respondent-Cross-Petitioner.

Supreme Court

*No. 79–1508. Argued March 30, 1981.—Decided April 29, 1981.*

(Also reported in 305 N.W.2d 133.)

For the petitioner there were briefs and oral argument by *Richard J. Lipson* of Madison.

For the appellant the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed by *Raymond M. Dall'Osto* of Milwaukee, for Wisconsin Affiliate of the American Civil Liberties Union.

STEINMETZ, J.   This case comes before the court on a petition to review a decision of the court of appeals which modified the judgment of the trial court and, as modified, affirmed that judgment. We modify the decision of the court of appeals and as modified, affirm.

The plaintiff-petitioner, Oliver L. Boldt, was committed to a state mental health facility in 1962 on the grounds that he was mentally incompetent to stand trial on a criminal charge. *See,* sec. 971.14(5), Stats., formerly sec. 957.13(2). The criminal charges were dropped and Boldt was released on November 4, 1974. The basic dispute in this case is whether the state or the petitioner is entitled to the petitioner's Social Security benefits which were payable during the period of commitment.

Under the rules of the Social Security Administration, Social Security benefits owed to a person in the plaintiff's situation are paid to a "representative payee." The representative payee must apply the benefits received to the physical and medical maintenance of the

beneficiary. If such needs are fully met, the payee must save the benefits for the beneficiary's future needs.[1] In this case the petitioner's brother was the representative payee until January 21, 1971. After that date the State of Wisconsin was designated payee.

The state claimed entitlement to all the Social Security benefits paid to representative payees under sec. 46.10, Stats., which authorizes the state to seek recovery for the expense of certain commitments from the committed person or his estate. Under this statute the petitioner's brother paid $5,386 to the state which he had received as representative payee and the state received an additional $8,276 from Social Security during the time in which the

[1] Social Security Handbook, secs. 1600, 1616 (1974):

"1600. THE BASIC POLICY OF THE SOCIAL SECURITY ADMINISTRATION with respect to the appointment of a representative payee (*i.e.*, a person selected to receive cash benefit payments on behalf of a beneficiary) is that every adult has the inherent right to manage his own cash benefit payments unless he has been found to be incapable of doing so. This chapter sets forth the principles which are followed in deciding when the beneficiary is incapable of receiving payment of his own cash benefits and it would be in his best interest to certify payment to a representative payee.

"*Hospital and medical insurance benefits* generally are paid directly to the organization or individual that provided the hospital, medical, or related health care services. However, certain hospital and medical insurance benefits may be paid directly to the beneficiary. See sec. 2401."

"1616. A REPRESENTATIVE PAYEE MUST APPLY THE PAYMENTS FOR THE USE AND BENEFIT of the entitled individual. Social security benefits are properly disbursed if they are:

"A. Spent for the beneficiary's current needs; or

"B. Saved for the beneficiary, if his current needs are being met.

"If his current and foreseeable future needs are being reasonably met, part of the benefits may also be used toward the current support of a spouse, child, or parent who is the beneficiary's legal dependent."

state was payee. The state thus received a total of $13,662 under the authority of sec. 46.10. The petitioner's maintenance during his commitment cost the state over $105,000.

Shortly before his release on November 4, 1974, the petitioner commenced legal proceedings for the recovery of the $13,662 which had been received by the state on his behalf. On May 16, 1974, petitioner filed a claim with the state claims board pursuant to secs. 16.007 and 16.53, Stats.[2] The board rejected this claim in a decision dated November 8, 1976. On February 23, 1977, a bill was

---

[2] Secs. 16.007(1), (5), Stats., and 16.53(8) provide as follows: "16.007 **Claims board.** (1) PURPOSE. The claims board shall receive, investigate and make recommendations on all claims presented against the state which are filed pursuant to s. 16.53 (8). No claim or bill relating to such a claim shall be considered by the legislature until a recommendation thereon has been made by the claims board."

"(5) FINDINGS. The board shall report its findings and recommendations, on all claims referred to it, to the legislature for action. If from its findings of fact the board concludes that any such claim is one on which the state is legally liable, or one which involves the causal negligence of any officer, agent or employe of the state, or one which on equitable principles the state should in good conscience assume and pay, it shall cause a bill to be drafted covering its recommendations and shall report its findings and conclusions and submit the drafted bill to the joint committee on finance at the earliest available time. A copy of its findings and conclusions shall be submitted to the claimant within 20 days after the board makes its determination. Findings and conclusions are not required for claims processed under s. 16.007(6)(b)."

"16.53 **Preaudit procedure.** The department of administration shall preaudit claims in accordance with the following procedures:

". . .

"(8) CLAIMS REQUIRING LEGISLATIVE ACTION. Every claim against the state requiring legislative action shall be made in the manner provided in sub. (1), in duplicate, and shall be filed in the office of the secretary. The secretary shall examine the claim, ascertain whether ordered by competent authority and, if properly made, designate the fund to which it is chargeable. Except in the case of claims described under s. 16.007(6)(b), the

introduced into the legislature which would authorize payment of the plaintiff's claim. The legislature rejected the claim on March 31, 1978. An action was commenced in the circuit court on August 7, 1978, against the state.

In a decision dated August 10, 1979, the court granted Boldt's motion for summary judgment but limited that judgment to the sums received by the state after August 7, 1971, on the grounds that claims to funds received before that date were barred by the statute of limitations. The court also awarded interest on this amount at the statutory rate of interest and awarded attorney's fees of $1,500 pursuant to 42 USC secs. 1983 (1974) and 1988 (1980).

The court of appeals modified this judgment and, as modified, affirmed.[3] Six issues are raised on this review:

(1) Was the petitioner's cause of action a claim to which the state has given its consent to be sued under sec. 775.01, Stats. (formerly sec. 285.01)?

(2) Can the circuit court waive the bond requirement of sec. 775.01, Stats., pursuant to sec. 814.29(1)?

(3) Does the state have a valid claim to the money it received for the support of the plaintiff?

(4) Is any part of the petitioner's claim barred by the statute of limitations?

(5) Is the petitioner entitled to interest on his claim and, if so, at what rate?

(6) Is the petitioner entitled to receive actual attorney's fees incurred in bringing this action?

---

secretary shall as soon as practicable refer the claim to the claims board for its findings of fact, its conclusions and its report thereon to the legislature for action. Whenever a bill authorizing the release of moneys or appropriating money for payment of a claim becomes a law the secretary, before drawing a warrant therefor on the treasurer, shall see that the proper account on which the release of moneys or the appropriation is based is filed in the secretary's office."

[3] *Boldt v. State*, 98 Wis.2d 445, 297 N.W.2d 29 (Ct. App. 1980).

## CONSENT TO SUIT

As this court stated in *Lister v. Board of Regents,* 72 Wis.2d 282, 291, 240 N.W.2d 610 (1976) :

"The concept of sovereign immunity in this state derives from art. IV, sec. 27 of the Wisconsin Constitution, which provides:

" 'The legislature shall direct by law in what manner and in what courts suits may be brought against the state.'

"From this provision the rule developed that the state cannot be sued without its consent. This immunity is procedural in nature and, if properly raised, deprives the court of personal jurisdiction over the state." (Footnotes omitted.)

The state gives consent to some of the suits brought against it in sec. 775.01, Stats. (formerly sec. 285.01, Stats.) which reads:

"775.01 **Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state."

This statute has been interpreted as giving the state's consent to suit in some causes of action but not in others. As this court said in *Cords v. State,* 62 Wis.2d 42, 50, 214 N.W.2d 405 (1974) :

"As for statutory consent by the state to suit in tort, this court has found none. Sec. 285.01, Stats., has been interpreted as limited to claims which if valid would render the state a debtor to the claimant.[14] [n. 14 *Chicago, Milwaukee & St. P. Ry. v. State, supra,* footnote 13; *Houston v. State* (1898), 98 Wis. 481, 74 N.W. 111;

*Holzworth v. State* (1941), 238 Wis. 63, 298 N.W. 163; *Townsend v. Wisconsin Desert Horse Asso., supra,* footnote 10; *Chart v. Gutmann* (1969), 44 Wis.2d 421, 171 N.W.2d 331.] Sec. 270.58 has also been interpreted not to be a consent by the state to be sued in tort.[15] [n. 15 *Forseth v. Sweet, supra,* footnote 9, at page 682.]

In *Trempealeau County v. State,* 260 Wis. 602, 51 N.W.2d 499 (1952) the court ruled that a suit for recovery of funds wrongfully paid to the state was an action at law for the recovery of money had and received which rendered the state a debtor and was therefore within the purview of sec. 285.01, Stats.

In *Hicks v. Milwaukee County,* 71 Wis.2d 401, 238 N.W.2d 509 (1976) the court came to the same conclusion. In *Hicks* the court described the nature of a claim for money had and received saying:

"In an action for money had and received on a theory of *quasi*-contract, recovery is allowed where the defendant has received a benefit from the plaintiff and the retention of such benefit by the defendant would be inequitable. The law implies a promise of repayment when no rule of public policy or good morals has been violated. The action is one at law, although governed by equitable principles.[9] [n. 9 *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis.2d 535, 101 N.W.2d 700.] . . . The focus in unjust enrichment cases is on the benefit received from the plaintiff by the defendant which, in good conscience, should not be retained. That money has merely been retained in the county treasury, rather than expended, has nothing to do with the elements of the cause of action. In fact, there may be circumstances where the money has been expended in such a way that the county has not been unjustly enriched at the expense of the plaintiff." *Hicks* at 404–05.

■ It is our conclusion that the complaint in the present case is sufficient to state a cause of action which comes within the coverage of sec. 775.01, Stats. The complaint on its face states two theories of recovery: (1) The

"constitutional tort" of the state depriving a person of property without due process of law and (2) an equitable remedy based on the theory that the state held the funds at issue in a constructive trust. A complaint must simply contain "a short and plain statement of the claim, identifying the transaction, occurrence or event or series of transactions, occurrences, or events out of which the claim arises and showing that the pleader is entitled to relief." Sec. 802.02(1)(a). The trial court correctly concluded that the facts alleged in the complaint constitute a cause of action for money had and received which can be brought against the state under sec. 775.01. The court therefore has jurisdiction as long as the requirements of that section are met.

## WAIVER OF BOND

Sec. 775.01, Stats., states that a claimant "may commence an action against the state by service as provided in sec. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000 . . . ." In the present case the trial court judge, the Hon. Michael Torphy, initially ruled that the plaintiff was not required to post bond in spite of sec. 775.01. Subsequently, Judge William D. Byrne ruled that a bond of $100 must be posted before the entry of judgment. The state argues on this review that the posting of bond is jurisdictional and therefore the trial court had no authority to proceed until bond was posted.

This court has previously stated that posting a bond is jurisdictional in nature and is a condition precedent to commencing an action against the state. *State ex rel. Martin v. Reis*, 230 Wis. 683, 284 N.W. 580 (1939). This rule applies, however, only if a bond is required under the law. Sec. 814.29, Stats., allows a trial court to permit the commencement of a suit without the giving of secur-

ity provided that the party files and the court approves of an affidavit stating that the party, due to poverty, is unable to post security.[4] There is no indication in this statute, in sec. 775.01 or elsewhere, that this waiver of bond does not apply to the bond requirement of sec. 775.01. Accordingly, we conclude that the bond requirement in actions against the state may be waived under the procedures described in sec. 814.29. In the present case a motion for leave to proceed without posting of bond and a supporting affidavit were filed by Boldt with the trial court pursuant to sec. 814.29. The trial court was thus within its authority in allowing the commencement of the action without bond and the present case was validly commenced.

## STATE'S CLAIM TO BOLDT'S BENEFITS

The state refuses to return to Boldt the $13,662 which it received from the Social Security Administration for

[4] "814.29 **Security for costs, suit tax, service and clerk's fees for indigents.** (1) Any person may commence, prosecute or defend any action or proceeding in any court, or any writ of error or appeal therein, without being required to give security for cost or to pay any service or clerk's fee or suit tax, upon filing in said court, and receiving approval of the affidavit by the court, his affidavit that because of his poverty he is unable to pay the costs of said action or proceeding, or any writ of error or appeal therein, or to give security for the same, and that he believes that he is entitled to the redress that he seeks in such action or proceeding, or writ of error or appeal, and setting forth briefly the nature of his cause or appeal, or defense. If such person subsequently recovers costs, the recovered amount shall first be applied to pay any service and filing fees which were waived under this subsection. Nothing contained in this section shall prevent the affiant from recovering any service or clerk's fees or any suit tax waived under this section. If such person subsequently recovers these costs, the recovered amount shall be used to pay any costs waived under this section.

"(2) The court may dismiss any action or proceeding brought under this section if it be made to appear that the allegation of poverty is untrue; or may require security as in other cases."

his care. The controlling law on this issue is described by *Conservatorship of Grams*, 63 Wis.2d 194, 216 N.W.2d 889 (1974).[5] In *Grams* as in the present case the party was committed to a state institution because he was incompetent to stand trial. In both cases the state sought compensation for the costs of commitment under sec. 46.10, Stats.[6] In *Grams* the court held that "there can

[5] *Grams* interpreted sec. 46.10, Stats., as it existed before it was amended effective July 31, 1975. *See*, Laws of 1975, ch. 39. The 1975 amendment specifically authorized the state to proceed under sec. 46.10 in cases of commitment for incompetency to stand trial under sec. 971.14(5). Since the petitioner's claim concerns funds which were collected by the state before 1975, however, the older statute, as interpreted in *Grams*, controls the merits of the claim. All references in this opinion to sec. 46.10 refer to that statute as it existed before the amendments of 1975.

[6] Sec. 46.10(1) and (2), Stats. 1965, is quoted below. As far as the present case is concerned, these sections did not undergo any substantive change during the period of the petitioner's commitment:

"46.10 **Maintenance of inmates or outpatients, liability; collection and deportation counsel; collections; court action; recovery.** (1) Liability for outpatient services and supplies and for the maintenance of patients in the institutions specified in this section and the collection and enforcement of such liability is governed exclusively by this section.

"(2) Any outpatient or patient in any charitable or curative institution of the state including the Wisconsin general hospital or of any county or municipality, in which the state is chargeable with all or a part of the patient's maintenance, except tuberculosis patients mentioned in ch. 50 and ss. 51.27 and 58.06(2), or heretofore or hereafter committed or admitted to any such institution, and his property and estate, including his homestead, or the husband or wife of such patient and their property or estates, including their homesteads, and in the case of a minor child the father or mother of the patient, and their property and estates, including their homesteads, shall be liable for such patient's maintenance not exceeding the actual per capita cost thereof, except as provided in ss. 51.22(2m) and 51.37(4), and the department may bring action for the enforcement of such liability, except that when it is shown that a husband, wife, widow or

be no recovery where the incarceration is founded on a pending criminal charge or a criminal sentence." *Grams* at 198. According to *Grams* a person committed for incompetency to stand trial can be required to pay for the costs of his commitment only if his commitment is first converted to a civil commitment under the provisions of ch. 51, Stats. 1973. The state would thus have a claim to the funds at issue only if Boldt's commitment were civil in nature.

In the lower courts the state suggested that Boldt's commitment was changed to a civil one sometime during his last year and one-half of commitment. If this were so, then the state would have had a lawful claim under *Grams* to the Social Security benefits received during that time and summary judgment in favor of the petitioner would not have been proper. As the court of appeals opinion explained, however, this issue was not properly raised before the trial court. In its briefs on review to this court the state has not mentioned this issue. This court concludes that the trial court properly treated the petitioner's entire commitment as based on lacking competency to stand trial.

The state attempts to distinguish the present case from *Grams* on the grounds that in *Grams* the state was seeking to collect the costs of commitment from the individual while in the present case the state has already secured the funds and the individual is seeking to have them returned. Although this distinction has a logical pertinence to the issue of the state's immunity to suit,

---

minors, or an incapacitated person may be lawfully dependent upon such property for their support, the court shall give due regard to this fact and release all or such part of the property and estate from such charge that may be necessary to provide for such persons. The department shall make every reasonable effort to notify the relatives liable as soon as possible after the beginning of the maintenance but such notice or the receipt thereof is not a condition of liability of the relative."

it is irrelevant to the merits of the underlying claim. This court has already ruled that the state gave its consent to suit and the petitioner was properly before the court. Once this is established it cannot make any difference in the controlling law if the state is seeking to collect funds for the maintenance of the individual (as in *Grams*) or whether the individual is seeking to recover funds wrongfully paid for his maintenance (as in the present case).

The petitioner's recovery against the state was allowed on the theory of money had and received, also known as unjust enrichment. The state argues that the petitioner's claim was without merit because the state, since it spent the funds in question and more on the petitioner's maintenance, was not unjustly enriched. This court does not agree with such reasoning. Claiming authority under sec. 46.10, Stats., the state took $13,662 which would otherwise have gone to the petitioner. The state was obligated under the law as it existed at that time to pay the full cost of the petitioner's commitment. The state avoided part of that obligation by taking the Social Security benefits to which the petitioner was entitled. The state thus avoided paying out of its own funds $13,662 which it was lawfully required to so pay. By avoiding this obligatory expenditure the state saved $13,662. It was thus unjustly enriched.

It is the decision of this court that the state has no lawful claim to the funds collected under the claimed authority of sec. 46.10, Stats., and that these funds are the lawful property of the petitioner.

## STATUTE OF LIMITATIONS

As a claim based on quasi-contract, Boldt's lawsuit was subject to the six-year statute of limitations of sec. 893.19 (3), Stats. In cases of the insanity and/or imprisonment

of the plaintiff, however, the statute of limitations may be tolled. Under sec. 893.33, Stats. 1977 (single disability) if the plaintiff is insane *or* imprisoned, the time allowed for the commencement of an action may be extended for up to five years (but no more than one year after the disability ceases). Under sec. 893.38, Stats. 1977 (double disability) if the plaintiff is insane *and* imprisoned, the statutory limitation period does not start to run until both disabilities are removed.[7]

Although there is considerable debate in the record as to whether the petitioner herein was under a double or single disability, this question need not be answered in order to resolve the issue. It is our opinion that under either disability provision the petitioner's claim was timely filed because the statute of limitations was tolled dur-

---

[7] These sections have been repealed and replaced by secs. 893.16 and 839.18, Stats. 1979–80. The present case was commenced, however, before the effective date of these changes. The sections as they appear in the Wisconsin Statutes 1977, are therefore controlling. The relevant sections read:

"893.33 **Persons under disability.** If a person entitled to bring an action mentioned in this chapter, except actions for the recovery of a penalty or forfeiture or against a sheriff or other officer for an escape, or for the recovery of real property or the possession thereof be, at the time the cause of action accrued, either

"(1) Within the age of 18 years, except for actions against health care providers; or

"(2) Insane; or

"(3) Imprisoned on a criminal charge or in execution under sentence of a criminal court for a term less than his natural life, the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended more than 5 years by any such disability, except infancy; nor can it be so extended in any case longer than one year after the disability ceases."

"893.38 **More than one disability.** When 2 or more disabilities shall coexist at the time the right of action accrued the limitation shall not attach until they all be removed."

ing his proceedings before the claims board and before the legislature.

Due process of law requires that a statute of limitations must give a reasonable time in which to commence an action. "A statute which undertakes to extinguish rights of action without giving such opportunity is not deemed a statute of limitations but an arbitrary, unlawfull impairment of a constitutional right." *Relyea v. Tomahawk Paper & Pulp Co.*, 102 Wis. 301, 78 N.W. 412 (1899) ; *See also,* 51 Am. Jur.2d, *Limitation of Actions,* secs. 31–35 (1970).

In the present case the petitioner promptly brought his claim before the claims board even before his release. After rejection by the claims board, the petitioner brought his claim to the legislature within four months. Slightly more than four months after the legislature rejected the claim, petitioner commenced suit in the circuit court. The order of remedies sought by the petitioner is required by statutes. Sec. 775.01, Stats., requires that a claim against the state can be commenced in the courts only after "the refusal of the legislature to allow a claim." Sec. 16.007(1) in turn specifies that "No claim . . . shall be considered by the legislature until a recommendation thereon has been made by the claims board." Had he not first presented his claim to the legislature, his action was subject to dismissal. *Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610 (1976). The petitioner acted promptly at every one of the required steps in the processing of this claim. The claims board, on the other hand, spent two and one-half years considering the claim and the legislature then let 13 months pass before it rejected the claim. It would be unreasonable to consider the statute of limitations as running during the time the claim was pending before the claims board and legislature. If one accepted the state's argument that the statute was running during

that time, then the legislature or the claims board could prevent any claim against the state from ever reaching the courts by simply not acting on the claim until more than six years had passed after the cause of action accrued. A statute of limitations cannot be used so as to completely bar any opportunity of the plaintiff to obtain a remedy. Accordingly, it is the opinion of this court that the statute of limitations was tolled when Boldt filed his claim with the claims board on May 16, 1974.

The statute began to run again when the claims board issued its decision on November 8, 1976. The statute was again tolled on February 23, 1977, upon the introduction into the legislature of a bill authorizing payment of petitioner's claim. The statute was tolled until the legislature rejected the bill on March 31, 1978. The statute commenced to run again on that date and ran until an action was commenced in the circuit court on August 7, 1978. Thus, in the space of about four years and three months following the filing of the claim with the claims board, the statute of limitations ran for only about eight months.

The statute of limitations was not tolled before the filing of the claim with the claims board. The statutory limit was lengthened, however, due to the petitioner's disability. Under the single disability provision which is least favorable to the petitioner, the time of his disability is not a part of the time limited for the commencement of the action, "except that the period within which the action must be brought cannot be extended more than 5 years by any such disability, except infancy; nor can it be extended in any case longer than one year after the disability ceases." Sec. 893.33(3), Stats. (1977).

In the present case, the claim was brought before the claims board, thus tolling the statute of limitations, before the petitioner's disability ceased. The statute, as explained above, ran for less than one year after filing with the board and before commencement in the circuit

court. Thus, the one-year provision of sec. 893.33(3), Stats. 1977, is fulfilled.

Operation of the five-year provision increases the statutory limitation period from six years to eleven. The first payment made to the state on behalf of the petitioner was entered in the state's accounts on January 5, 1965. Under this 11-year limitation period, in conjunction with the tolling of the statute while the claim was pending before the board and the legislature, even this payment was not barred by the statute of limitations, since by action of law only nine years and eleven months had passed from the date the state first received plaintiff's moneys unjustly.

It is thus our conclusion that, even under the disability provision least favorable to the petitioner, no part of his claim is barred by the statute of limitations. We do not therefore reach the question of whether the single or double disability provision is applicable to this case.

## INTEREST

The trial court awarded interest on the petitioner's claim at the statutory rate set forth in sec. 138.04, Stats.[8] The state argues, however, that no interest should be paid on the claim while the petitioner insists that interest should be charged at the rate which was paid on securities sold in the open market.

The state argues that no interest should be paid since it would be inequitable to charge the state interest on

---

[8] "138.04 **Legal rate.** The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in s. 138.05, in which case such rate shall be clearly expressed in writing."

money which it did not invest, but rather spent on the petitioner's care. This argument rests on the state's argument that it was not unjustly enriched. As we have already explained, the state was unjustly enriched by the withholding of the funds in question. Therefore, it cannot claim that interest is inequitable on that ground.

The petitioner is equally insistent that interest be charged at the market investment rate. He argues that the state held the petitioner's Social Security benefits in a constructive trust and as constructive trustee was obliged to invest the trust corpus at market rates. The trial court held, however, and we affirm, that the nature of this suit is unjust enrichment, not constructive trust.

The controlling law was set forth in *Milwaukee v. Firemen Relief Asso.*, 42 Wis.2d 23, 165 N.W.2d 384 (1969). In that case we ruled that if a successful suit is brought against a unit of government under sec. 285.01, Stats., then the government is obligated to pay interest on the judgment. We also ruled that the rates of interest set forth in sec. 138.04 "should be construed as being declaratory of the common law as it now exists and as applicable to all legal entities, including all branches of government, unless specifically exempted by legislative enactment." 42 Wis.2d 23, 39. There is no specific exemption disallowing interest or prescribing a different interest rate in regard to the state in the present case. Therefore, the rates prescribed by sec. 138.04 apply.

We find the plaintiff entitled to the legal rate of interest of 5% as set forth in sec. 138.04, Stats., on all funds received by the state and from the dates the moneys were received by the state.

## ATTORNEY'S FEES

42 USC sec. 1988 (1980) provides that a plaintiff may recover actual attorney's fees in cases based on a civil

rights violation under 42 USC sec. 1983 (1974).[9] The petitioner in the present case claims that his suit is based on sec. 1983 and that he is therefore entitled to recovery under sec. 1988.

The petitioner's complaint alleges as a cause of action "a violation of the due process clauses of the Wisconsin and United States constitutions." Since sec. 1983 subjects to liability persons who "under color of any statute" cause "the deprivation of any rights, privileges, or immunities secured by the Constitution," the allegations of the complaint in that respect are sufficient to plead a sec. 1983 action. The petitioner is not entitled to recovery under sec. 1983, however, because the state is not subject to suit under sec. 1983.

The United States Supreme Court has held that a state is not liable under sec. 1983 because a state is not a "person" within the meaning of sec. 1983. According to *Quern v. Jordan,* 440 U.S. 332 (1979), the immunity of the states to suit is not destroyed by sec. 1983 and a state may not be sued even in a sec. 1983 action without its consent.[10] There is no provision in the Wisconsin Stat-

---

[9] "1983. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Sec. 1988 provides in part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[10] See also, *Hutto v. Finney,* 437 U.S. 678 (1978).

utes giving consent to sec. 1983 or other civil rights actions. Consequently, the petitioner cannot recover on a sec. 1983 cause of action.

The petitioner in the present case is able to recover at all only because the court interpreted his complaint as pleading a cause of action of unjust enrichment. The petitioner cannot and does not recover anything under sec. 1983 because the state is not subject to such suits. Since recovery of actual attorney's fees under sec. 1988 is dependent on a successful suit being brought under sec. 1983, the petitioner is not entitled to recover actual attorney's fees.

In a successful action to which the state has given its consent, "costs" may be recovered under sec. 775.01, Stats. Costs are described in sec. 814.04(1) as limited to $100 in cases where the amount recovered is more than $1,000. This is the only statutory authority for the recovery of attorney's fees. Consequently, we conclude that petitioner's recovery for attorney's fees is $100.

In summary, the petitioner pleaded a valid cause of action in unjust enrichment. The trial court validly waived the bond usually required in actions against the state. The petitioner is entitled to the full $13,662 collected by the state and no part of the claim is barred by the statute of limitations. Interest must be awarded at the statutory rates. The petitioner is not entitled to actual attorney's fees but is entitled to statutory costs of $100.

*By the Court.*—The decision of the court of appeals is modified and as modified, affirmed.

COFFEY, J., took no part.